724 So.2d 782 (1998)
Deborah BATSON, Eula Maye Batson, and Billy M. Batson
v.
SOUTH LOUISIANA MEDICAL CENTER and State of Louisiana, Through the Department of Health and Human Resources, et al.
No. 97 CA 1382.
Court of Appeal of Louisiana, First Circuit.
September 25, 1998.
*783 Michael Samanie, Herbert W. Barnes, Houma, for Plaintiffs-Appellees Deborah Batson, et al.
Gregory C. Weiss, Kathryne Caraway, New Orleans, for Defendants State of Louisiana and South Louisiana Medical Center.
Peter Sperling, New Orleans, for Defendants-Appellants Medforce Physical Therapy Services, Inc., et al.
Joseph A. Reilly, Lafayette, for Defendant Sunbelt Physical Therapy.
Richard Ieyoub, Baton Rouge, Attorney General on behalf of the State of Louisiana, through the Louisiana Department of Justice Defendant.
Amos H. Davis, Baton Rouge, for Defendant Chicago Insurance Company.
Kristin E. Hendericks, Metairie, for Defendant Medforce International, Inc.
BEFORE: FITZSIMMONS and GUIDRY, JJ., and CHIASSON[1], J. Pro Tem.
GUIDRY, J.
In this medical malpractice action, defendants, Medforce Physical Therapy Services, Inc., Robert Rowe, Leah Angelito, and St. Paul Fire and Marine Insurance Company, appeal from the trial court's judgment finding that St. Paul Fire and Marine Insurance Company was contractually liable to the plaintiffs for the payment of damages attributable to the aforementioned defendants. Plaintiffs answer the appeal and request an increase in the sum of damages awarded. We affirm.

FACTS AND PROCEDURAL HISTORY
On or about July 26, 1990, Deborah Batson (Ms. Batson) had a surgical procedure performed on her at South Louisiana Medical Center[2] (SLMC) in Houma, Louisiana. Following the surgical procedure, Ms. Batson contracted sepsis. As a result of the sepsis, Ms. Batson suffered severe complications and spent several months in the intensive care unit. During this hospital stay, Ms. Batson developed a hip fracture, decubitus ulcers, flexion contractures and became incontinent.
On July 19, 1991, Ms. Batson and her parents, Eula Maye Batson and Billy M. Batson, (collectively referred to as "plaintiffs") filed a petition for damages, naming as defendants, SLMC and the State of Louisiana, through the Department of Health and Human Resources, Office of Hospitals. Plaintiffs alleged that during her hospital stay, Ms. Batson developed severe complications resulting in near-death and severe disabling injuries. Plaintiffs further alleged that Ms. Batson's injuries were the result of SLMC's negligence. Plaintiffs asserted that SLMC's negligence resulted from a failure to properly and timely diagnose Ms. Batson's condition, failure to provide adequate and competent medical care, failure to provide adequate and competent medical testing, failure to provide the proper standard of care *784 required and failure to obtain informed consent.
On March 23, 1993, plaintiffs filed a first supplemental and amending petition for damages, naming as additional defendants: Louisiana Physical Therapy and Athletic Rehabilitation, Inc.; Medforce International, Inc.; Medforce Physical Therapy Services, Inc.; Sunbelt Physical Therapy Services, Inc.; Robert Rowe; and Leah Angelito (collectively referred to as "defendants").[3] Plaintiffs contended that Medforce International, Inc. merged with Medforce Physical Therapy Services, Inc. Plaintiffs alleged that SLMC had contracted with Louisiana Physical Therapy and Athletic Rehabilitation, Inc., and under the contract, Louisiana Physical Therapy and Athletic Rehabilitation, Inc. would provide SLMC with physical therapists and rehabilitation services. It was alleged that Louisiana Physical Therapy and Athletic Rehabilitation, Inc. then contracted with Medforce International, Inc., and under this contract, Medforce International, Inc. was to provide Louisiana Physical Therapy and Athletic Rehabilitation, Inc. with inpatient and outpatient physical therapists to perform services at SLMC. It was also alleged that Robert Rowe (Mr. Rowe), a physical therapist, was an employee of Medforce International, Inc. and provided physical therapy services to Ms. Batson at SLMC. Plaintiffs contended that Ms. Batson developed severe complications as a result of the actions of Mr. Rowe and Medforce International, Inc. Plaintiffs further contended that Medforce International, Inc. and/or Louisiana Physical Therapy and Athletic Rehabilitation, Inc. were vicariously liable for the negligent acts and omissions of Mr. Rowe.
Plaintiffs also asserted that Medforce International Inc. contracted with Sunbelt Physical Therapy Services, Inc. It was alleged that under this contract, Sunbelt Physical Therapy Services, Inc. would provide physical therapists to Medforce International, Inc., and in turn, Medforce International, Inc. would use these physical therapists to provide physical therapy services at SLMC. Plaintiffs asserted that Leah Angelito (Ms. Angelito), a physical therapist, was an employee of Sunbelt Physical Therapy Services, Inc., Medforce International, Inc., and/or Louisiana Physical Therapy and Athletic Rehabilitation, Inc., and performed physical therapy on Ms. Batson at SLMC. Plaintiffs alleged that Ms. Batson developed severe complications as a result of the physical therapy treatment, or lack thereof, received from Ms. Angelito. Plaintiffs contended that Sunbelt Physical Therapy Services, Inc., Medforce International, Inc. and/or Louisiana Physical Therapy and Athletic Rehabilitation, Inc. are vicariously liable for the negligent acts and omissions of Ms. Angelito.
Plaintiffs asserted that SLMC contracted with Medforce Physical Therapy Services, Inc. to receive physical therapy and rehabilitation services from Medforce Physical Therapy Services, Inc. Plaintiffs further asserted that while Ms. Batson was in SLMC, Ms. Batson developed severe complications as a result of the actions and inaction's of Medforce Physical Therapy, Inc.
Medforce International, Inc., Medforce Physical Therapy Services, Inc. and Robert Rowe filed an answer generally denying plaintiffs' allegations. On July 29, 1994, SLMC and the State filed an answer generally denying plaintiffs' allegations. SLMC and the State filed a cross-claim, naming as defendants: Medforce International, Inc.; Medforce Physical Therapy Services, Inc.; Sunbelt Physical Therapy Services, Inc.; Mr. Rowe; and Ms. Angelito. SLMC and the State alleged that, if liable, they were entitled to indemnity and/or contribution of at least $1,000,000.00 and unlimited future medical care and related benefits from the cross-claim defendants, pursuant to a hold harmless agreement with Medforce International, Inc. SLMC further alleged that a contract existed with Medforce International, Inc. which required Medforce International, Inc. to provide physical therapists to Louisiana Physical Therapy and Athletic Rehabilitation, Inc. for both inpatient and outpatient physical *785 therapy services at SLMC. It was contended that during Ms. Batson's stay in the intensive care unit, she developed extensive flexion contractures that were caused solely by the fault and/or negligence of agents and/or personnel of Medforce International, Inc. by: failing to carry out the physicians' orders which required physical therapy on Ms. Batson four times per day; failing to timely advise the physicians at SLMC of the progressive nature of Ms. Batson's flexion contractures; and failing to recommend that therapy be initiated seven days per week due to the progressive nature of the flexion contractures.
Thereafter, plaintiffs amended their petition to add St. Paul Fire and Marine Insurance Company as a defendant, alleging St. Paul Fire and Marine Insurance Company provided a policy of liability insurance covering Medforce Physical Therapy Services, Inc. Plaintiffs also alleged that Ms. Angelito was the borrowed servant of Medforce Physical Therapy Services, Inc. Plaintiffs further alleged that Medforce Physical Therapy Services, Inc. was vicariously liable for the negligent acts and omissions of Ms. Angelito.
A four-week jury trial was held from July 8, through August 2, 1996. Prior to the jury returning a verdict, plaintiffs entered into a high-low settlement agreement with defendants (Medforce Physical Therapy Services, Inc.; Louisiana Physical Therapy and Athletic Rehabilitation, Inc.; Mr. Rowe; and Ms. Angelito).[4] According to the agreement, a low-end amount of $750,000.00 in damages would be paid if the jury returned a verdict less than $750,000.00, even if there was a finding of no fault on the part of these defendants. The high-end of the agreement was $1,750,000.00, meaning that if the jury returned a damages award greater than this figure, relative to these defendants' liability, the plaintiffs had agreed to accept a settlement amount of $1,750,000.00.
Following deliberations, the jury returned a verdict, finding that SLMC, Medforce Physical Therapy Services, Inc., Mr. Rowe and Ms. Angelito were all liable in their treatment of Ms. Batson relative to her flexion contractures.[5] Fault was assessed as follows: SLMC with 90% of the fault; Medforce Physical Therapy Services, Inc. with 9.7% of the fault; Mr. Rowe with 0.2% of the fault; and Ms. Angelito with 0.1% of the fault. Ms. Batson was awarded the following damages:

1) Past medical expenses $ 536,949.91
2) Future medical expenses $1,000,000.00
3) Physical pain and suffering, past
 and future $ 50,000.00
4) Mental pain and suffering, past and
 future $ 50,000.00

In addition, the jury found that Ms. Angelito was a borrowed employee of Medforce Physical Therapy Services, Inc.
On October 4, 1996, plaintiffs filed a motion to enforce the settlement agreement. The issue before the trial court was whether plaintiffs were able to recover the entire damages award from St. Paul Fire and Marine Insurance Company who insured Medforce Physical Therapy Services, Inc. and its employees, Mr. Rowe and Ms. Angelito. A hearing on the motion was held on November 22, 1996. At the close of the hearing, the trial court stated that the defendants owed plaintiffs $818,474.96 in damages which was one-half (50%) of the $1,636,949.91 in damages awarded by the jury, pursuant to LSA-C.C. art. 2324 which provided for solidary liability among joint tortfeasors. The trial court concluded that the intention of LSA-C.C. art. 2324 was to set a cap of 50% on the amount of damages that plaintiffs could recover from the joint tortfeasors.
On December 9, 1996, plaintiffs filed a motion for rehearing and/or reconsideration. A hearing was held on January 21, 1997. Following this hearing, the trial court rendered a judgment in favor of the plaintiffs, *786 finding that the defendants were each solidarily liable for up to 50% of the total damages awarded, and that St. Paul Fire and Marine Insurance Company was contractually liable unto plaintiffs' for the liability of each of the aforementioned defendants up to the full amount of plaintiffs' damages of $1,636,949.91, together with legal interest thereon from September 1, 1996, until paid; attorney's fees of $5,000.00; and all of the legal costs for the November 22, 1996 hearing. The trial court found that St. Paul Fire and Marine Insurance Company was in bad faith and ordered St. Paul Fire and Marine Insurance Company to pay interest at the rate of 18% on the sum of $841,682.16 from November 22, 1996, until paid and an additional $5,000.00 in attorney's fees and legal costs for the January 21, 1997 hearing. It is from this judgment that defendants now appeal and allege the following assignments of error:
1. Civil Code Article 2324, as amended and reenacted by Act 3 of the Extraordinary Legislative Session of 1996, is retroactive, and therefore, the trial court erred in failing to find that each defendant in this matter is liable only for its virile share.
2. Prior to its amendment, Civil Code Article 2324 placed a cap on solidary liability of 50%, therefore, the trial court erred in ruling that once plaintiffs recovered 50% from one St. Paul insured, plaintiffs could still recover an additional 50% from another St. Paul insured.
3. Prior to its amendment, Civil Code Article 2324 precluded a judgment creditor from securing 100% recovery from one joint tortfeasor, therefore, the trial court erred in finding Medforce and its insurer, St. Paul, liable for 100% of plaintiffs' recoverable damages.
4. Where an insurer attempts on a number of occasions to pay a settlement which has not been reduced to writing, that insurer has not breached its duty of good faith and fair dealing under LSA-R.S. 22:1220, thus, it was an error for the trial court to find St. Paul liable for damages pursuant to that statute.
5. The judgment submitted by plaintiffs provided for interest and penalties in excess of that awarded by the court, therefore, that judgment is invalid insofar as it differs from the court's ruling.
6. Neither the settlement agreement at issue, nor LSA-R.S. 22:1220 provides for an award of attorney's fees, therefore, it was an error for the court to make such an award.
Plaintiffs filed an answer to the appeal, requesting an increase in the damages awarded.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, defendants contend that Civil Code Article 2324, as amended and reenacted by Act 3 of the Extraordinary Legislative Session of 1996, is retroactive and applicable to the case at hand. Defendants further contend that since Civil Code Article 2324 is retroactive and applies to this case, the trial court erred in failing to find that each defendant was liable only for his virile share. In light of the supreme court's determination that the 1996 amendment to Civil Code Article 2324(B) could only be applied prospectively, defendants have abandoned this assignment of error. Aucoin v. State Department of Transportation and Development, 97-1938, 97-1967, p.10 (La.4/24/98), 712 So.2d 62, 67, available on Westlaw at 712 So.2d 62, 1998 WL 205320. See also Jones v. Hawkins, 29,914 (La.App. 2 Cir. 1/21/98), 708 So.2d 749 (on rehearing); 708 So.2d 749, 760.

ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE
In Assignment of Error Number Two, defendants contend that prior to its 1996 amendment, Civil Code Article 2324(B) placed a cap on solidary liability of 50%, and the trial court erred in ruling that once plaintiffs recovered 50% from an insured of St. Paul Fire and Marine Insurance Company, then plaintiffs could still recover an additional 50% from another insured of St. Paul Fire and Marine Insurance Company. Through Assignment of Error Number Three, defendants contend that Civil Code Article 2324(B) precludes a judgment creditor from securing 100% recovery from one joint tortfeasor, *787 and the trial court erred in finding St. Paul Marine and Fire Insurance Company contractually liable for 100% of plaintiffs' recoverable damages. On the other hand, plaintiffs contend that they can collect 100% of their damages by collecting up to 50% from each joint tortfeasor found at fault.
At the time of the accident, Louisiana Civil Code Article 2324(B) provided as follows:
B. If liability is not solidary pursuant to Paragraph A, or as otherwise provided by law, then liability for damages caused by two or more persons shall be solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages; however, when the amount of recovery has been reduced in accordance with the preceding Article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of fault has been attributed. Under the provisions of this Article, all parties shall enjoy their respective rights of indemnity and contribution.
This controversy deals with the meaning of the phrase "liability for damages caused by two or more persons shall be solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages." In Touchard v. Williams, 617 So.2d 885, 888 (La.1993), the supreme court determined that this version of Louisiana Civil Code art. 2324 was not clear and free of ambiguity, particularly the phrase in question. The supreme court indicated that scholars and commentators have wrestled with the meaning of the article since its revision. The supreme court interpreted this article by considering the legislative intent and the reasons which prompted the legislature to enact the law. The supreme court noted that solidary liability among co-tortfeasors has been a part of Louisiana's civil tradition for over 150 years. Touchard v. Williams, 617 So.2d at 888. The supreme court further noted that the courts "espoused a theory that it is better to allocate damages to the injurers, even in greater portions than their respective degrees of fault, than have victims suffer a reduced recovery." Touchard v. Williams, 617 So.2d at 890. The underlying policy of solidary liability is victim compensation. Touchard v. Williams, 617 So.2d at 889. The supreme court indicated that when the above phrase was added to art. 2324(B), the Legislature was dealing with the situation where solvent defendants who were minimally or not exclusively liable were being burdened with 100% of plaintiff's damages. Thus, the supreme court concluded that the addition of the above phrase represented a compromise between the competing interests of judgment creditors and judgment debtors. Touchard v. Williams, 617 So.2d at 891. Prior to the addition, co-tortfeasors were liable for 100% of the plaintiff's damages, but with this addition, a judgment debtor's exposure is limited, in the absence of a greater than 50% assignment of that debtor's fault, to fifty percent of the plaintiff's "recoverable damages." Touchard v. Williams, 617 So.2d at 891. The supreme court determined that the phrase was used as a means of capping liability at 50%. Touchard v. Williams, 617 So.2d at 892. Thereafter, the supreme court remanded the case to the district court and ordered that the defendants be cast solidarily for 50% of the plaintiff's recoverable damages.
Following the remand, the Touchard case was appealed to the third circuit. In Touchard v. Williams, 94-777 (La.App. 3rd Cir.3/20/96), 671 So.2d 1065, the third circuit applied the supreme court's interpretation of Civil Code Article 2324 as expressed in the Touchard case. The third circuit concluded that under the supreme court's interpretation, each tortfeasor is solidarily liable for 50% of the plaintiff's recoverable damages. Touchard v. Williams, 671 So.2d at 1068; see also Hayes v. Kelly, 625 So.2d 628, 634 (La. App. 3rd Cir.1993), writs denied, 93-3026, 93-3048, (La.2/4/94), 633 So.2d 171, 580. We agree with this conclusion and note that the defendants' interpretation of this holding is tragically flawed. The supreme court pointed out that a judgment creditor is not limited to recovering from each tortfeasor only his percentage of fault, unless the judgment creditor is assigned a greater degree of fault than the given tortfeasor. Touchard v. Williams, 617 So.2d at 892. The supreme *788 court concluded that in solido liability among joint tortfeasors is preserved but is merely limited to 50%, as opposed to the previously existing 100%. Touchard v. Williams, 617 So.2d at 892.
Based on our interpretation of Louisiana Civil Code Article 2324 and the controlling jurisprudence, we find that each defendant is jointly liable for 50% of plaintiffs' recoverable damages, but only until the plaintiff recover 100% of their damage award. Therefore, we find that the trial court correctly held that each tortfeasor (Medforce Physical Therapy Services, Inc., Mr. Rowe and Ms. Angelito) is solidarily liable for 50% of Ms. Batson's recoverable damages. We conclude that Medforce Physical Therapy Services, Inc., Mr. Rowe and Ms. Angelito are each liable to Ms. Batson for $818,474.96. Thus, Ms. Batson is entitled to collect her total damages of $1,636,949.91 from St. Paul Fire and Marine Insurance Company which is contractually liable for Medforce Physical Therapy Services, Inc. and its employees (Mr. Rowe and Ms. Angelito). These assignments of error have no merit.

ASSIGNMENTS OF ERROR NUMBERS FOUR AND FIVE
In Assignment of Error Number Four, defendants assert that the trial court erred in finding that St. Paul Fire and Marine Insurance Company breached its duty of good faith and fair dealing and ordering St. Paul Fire and Marine Insurance Company to pay damages pursuant to LSA-R.S. 22:1220. Through Assignment of Error Number Five, defendants also contend that the judgment submitted by plaintiffs provided for interest and penalties in excess of that awarded by the trial court, and the judgment should be declared invalid insofar as it differs from the trial court's ruling.
LSA-R.S. 22:1220 provides, in pertinent part, as follows:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
D. The provisions of this Section shall not be applicable to claims made under health and accident insurance policies.
In Theriot v. Midland Risk Insurance Company, 95-2895 (La.11/14/96), 683 So.2d 681, withdrawn, rehearing granted, (La.12/13/96), the Louisiana Supreme Court held that Section 1220 A applies to third party claimants as well as insureds and to all claims, not just claims for property damage and medical expenses. The supreme court further held that claimants were not limited *789 to a cause of action for only those acts enumerated in subsection B. However, on rehearing, the supreme court reversed the latter holding and concluded that a party suing an insurer under the statute would only have a cause of action for the acts enumerated in LSA-R.S. 22:1220 B. Theriot v. Midland Risk Insurance Company, 95-2895 (La.11/14/96), 683 So.2d 681, withdrawn, rehearing granted (La.12/13/96), reversed in part on rehearing, 95-2895 (La.5/20/97), 694 So.2d 184.
At the settlement hearing, plaintiffs argued that they were entitled to damages because of defendants' failure to pay the settlement amount within thirty days, pursuant to Subsection B(2) of LSA-R.S. 22:1220. This provision requires that payment of settlement funds occur within thirty days after the settlement has been reduced to writing. In this case, the settlement agreement was entered into in open court on August 1, 1996, and following transcription of the agreement, it was filed into the record on August 7, 1996. We consider this transcribed settlement agreement equivalent to a settlement agreement reduced to writing. See LSA-C. C. art. 3071.
Under the settlement agreement, defendants were liable to plaintiffs for the sum of $750,000.00 regardless of the jury's verdict. Defendants failed to pay this sum or place this sum in the court registry. Plaintiffs presented evidence showing the amount of interest that $750,000.00 could have yielded over the period of time that had elapsed thirty days after the jury verdict was rendered. The trial court found that the defendants breached their duty of good faith and fair dealing and awarded legal interest on the damages awarded to Ms. Batson. Whether a party has proved that he or she actually suffered damages as a result of the insurer's breach is a factual determination to be made by the trial court. Graves v. Businelle Towing Corporation, 95-1999, p.6 (La.App. 1st Cir.4/30/96), 673 So.2d 311, 315. The trial court's factual findings are reviewed by the manifest error rule: (1) a reasonable factual basis does not exist for the trial court's finding, and (2) that finding is clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987). We cannot say that the trial court was manifestly erroneous in its findings that St. Paul Fire and Marine Insurance Company breached its duty of good faith and fair dealing.
Additionally, defendants contend that the trial court judgment provided for interest and penalties in excess of that awarded by the trial court at the January 21, 1997 hearing. The record reflects that the trial court's original ruling was rendered on November 22, 1996. At this time, the defendant was determined to be in bad faith pursuant to La. R.S. 22:1220 and ordered to pay one-half of the 1.6 million dollars ($818,474.96) with legal interest from September 1, 1996, until paid, costs and attorney's fees in favor of the plaintiff for $5000.00, and 12% interest on $23,367.00 from September 1, 1996 until paid. The above was the subject of a hearing which was held on January 21, 1997, prior to the judgment being signed, wherein each party was present and extensive discussion was had on the terms of this award. At this time, the court again found the defendant to be in bad faith and increased the rate in interest to 18% on the previously awarded damages. In addition, it awarded another 50% recoverable damages plus interest thereon, making the defendants liable for the entire 100%. A question subsequently arose regarding the wording of the judgment and a telephone conference was held on January 23, 1997, to discuss this matter. Later, the judge not only signed the judgement, but also issued a Per Curiam opinion, setting forth in writing what was said in the conference.
The presumption on appeal is that the judgment rendered by the trial court is correct and was decided according to law, and the burden is on the appellant of showing the contrary. Plauche v. Derouen, 193 So.2d 918, 920 (La.App. 3rd Cir.1967) (quoting Cryer v. Ring, 149 So.2d 451 (La.App. 3d Cir.1963), cert. denied, 244 La. 150, 150 So.2d 769 (1963)). This court finds that the appellant failed to meet his burden of proving that the trial court's judgment is inconsistent with its ruling. It is for this reason that we lack authority to comply with defendants request in this instance.
*790 Realizing the limitations of these assertions, we seize the opportunity to inform the defendant of our opinion that he was afforded ample opportunity to notify the trial court of these concerns prior to the signing of the judgment.

ASSIGNMENT OF ERROR NUMBER SIX
In this assignment of error, defendants argue that the trial court erred in awarding attorney's fees because neither the settlement agreement nor LSA-R.S. 22:1220 provided for an award of attorney's fees.
Louisiana law does not allow the award of attorney's fees, except where authorized by statute or contract. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756, 763 (La.1985). Thus, it would appear that defendants are correct in their assertion. However, after intense inquiry, this court recognizes that what is now being labeled as attorney's fees is not attorney's fees in the traditional sense. It is actually an award of damages to compensate the plaintiffs for the unexpected litigation which has resulted from defendants' bad faith in not honoring the express terms of the "high-low" agreement. While defendants, as part of the agreement, waived their right to an appeal, it is clear that in pursuing this action, defendants have obviously chosen to ignore their previous waiver. Therefore, we find that the trial court correctly awarded damages, labeled attorney's fees, to the plaintiffs in the amount of $10,000.00.
This court further notes that plaintiffs have abandoned their request for an increase in the sum of damages awarded.

CONCLUSION
For the foregoing reasons, this court finds that the "high-low" agreement between the parties was a binding contract which the defendants have failed to honor. In accordance with this finding, we affirm the decision of the trial court against appellants, Medforce Physical Therapy Service, Inc. Robert Rowe, and Leah Angelito, finding each at fault in causing the flexion contractures and the associated damages to plaintiffs. All costs of this appeal are assessed against the appellant.
AFFIRMED.
FITZSIMMONS, J., subscribes to the opinion, and assigns additional reasons.
FITZSIMMONS, Judge, subscribes, with additional reasons.
La. R.S. 22:1220 does not provide for attorney's fees. However, it does allow "for any damages sustained as a result of the breach" of the duties of "good faith and fair dealing." La. R.S. 22:1220 A. The plaintiff was required to file two motions and present the arguments on the settlement issues at two hearings. The trial court awarded attorney's fees of $5000 for each hearing. These were out-of-pocket expenses, or "damages sustained" by the plaintiff, for the defendants' breach of their duties under La. R.S. 22:1220 A caused by the failure to pay the "settlement within thirty days...." La. R.S. 22:1220 B(2). See Maryland Cas. Co. v. Dixie Ins. Co., 622 So.2d 698, 703 (La.App. 1st Cir.1993).
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] South Louisiana Medical Center has changed its name to "Leonard J. Chabert Medical Center." For purposes of this opinion, we will use the name of "South Louisiana Medical Center."
[3] The first supplemental and amending petition also added as defendants, Action Temporary Services, Inc. and Temporary Solutions, Inc. Plaintiffs alleged that these defendants were businesses that had merged with Medforce International, Inc. However, these defendants are not parties in this appeal.
[4] Ms. Angelito's inclusion in the settlement agreement was contingent upon a finding by the jury that she was the borrowed servant of Medforce Physical Therapy Services, Inc.
[5] We note that separate jury verdict forms were prepared on Ms. Batson's other claims of negligence and injures. These claims resulted in the following verdict: SLMC found liable for Ms. Batson's infection (sepsis) and damages of $867,318.03 awarded; SLMC found liable for Ms. Batson's decubitus ulcers and damages of $40,000.00 awarded; and no defendants were found liable for Ms. Batson's fractured hip or incontinence. These findings by the jury are not raised as issues on appeal.