744 So.2d 13 (1998)
Virginia C. REED, et al.
v.
Roy Allen RECARD, et al.
No. 97 CA 2250.
Court of Appeal of Louisiana, First Circuit.
November 18, 1998.
Writ Denied February 12, 1999.
*15 Phil Breaux, St. Gabriel, LA, Attorney for Plaintiffs-Appellees, Virginia C. Reed and Daniel Reed.
Daniel R. Atkinson, Jr., Baton Rouge, LA, Attorney for Defendant-Appellant, Allstate Ins. Co.
Donna B. Wood, Baton Rouge, LA, Attorney for Defendants-Appellants, Patterson Ins. Co. and Roy Allen Recard.
Before SHORTESS, C.J., and CARTER and WHIPPLE, JJ.
CARTER, J.
Virginia C. Reed (Reed) was injured in a rear-end collision on December 11, 1995. She sued Roy Allen Recard, the driver of the vehicle that struck her van, as well as his liability insurer, Patterson Insurance Company, and her uninsured motorist insurer, Allstate Insurance Company. Her husband, Daniel K. Reed, and their four minor children joined as plaintiffs, seeking damages for loss of consortium. After a bench trial, the trial court rendered judgment against Recard and in favor of Reed for $30,259.00, subject to credits of $10,500.00 paid by Patterson and $10,000.00 paid by Allstate. The court awarded Daniel Reed $1,000.00 for loss of consortium. The claims of the minor children apparently were abandoned prior to trial, although they were never formally dismissed.
The trial court found Patterson and Allstate "failed to fairly and promptly make a reasonable effort to settle [plaintiffs'] claim... [and] in fact made a deliberate effort to delay and frustrate the plaintiffs' attempts to reach a settlement." It rendered judgment in favor of plaintiffs and against Patterson and Allstate, in solido, for $2,000.00 in damages for emotional distress and $10,000.00 for attorney fees. In addition, the court awarded plaintiffs penalties of $4,000.00 against Patterson and $5,000.00 against Allstate.
None of the defendants are satisfied with the judgment. Patterson and Allstate appeal, contending the trial court erred in awarding damages, penalties, and attorney fees against them. Allstate also complains that the trial court erred in giving its claim file to plaintiffs' attorney without making a formal return on the record. Recard appeals, contending the trial court exhibited partiality toward *16 plaintiffs that constituted reversible error and that the general damages, lost earnings award, and loss of consortium award were excessive.

ALLEGED EVIDENTIARY ERRORS AND BIAS OF TRIAL COURT
Allstate contends the trial court committed an evidentiary error in giving its claim file to plaintiffs' counsel. Plaintiffs sought a copy of Allstate's claim file in discovery. Allstate objected, contending there was privileged information in the file. The file was submitted to the trial court for an in-camera inspection. It is not clear from the record whether the trial court gave the entire claim file to plaintiffs' counsel. Unfortunately, if the trial court gave plaintiffs' counsel the entire file, we have no way of knowing whether Allstate was prejudiced by the court's action because the file is not part of the record on appeal. Further, no privileged material from the file was introduced at trial. Allstate's counsel objected to plaintiffs' counsel's one attempt to introduce a privileged document, and the objection was sustained. We agree with Allstate that the trial court should not have handled the incamera inspection of Allstate's file the way it did, but Allstate has failed to show reversible error.
Allstate and Recard also contend the conduct of the trial court in handling the Allstate claim file, together with improper comments made by it during the trial, show such prejudice against insurance companies that this case should be reversed. The trial court is afforded discretion in conducting a trial, but that discretion is circumscribed by considerations of justice and fairness. The trial court is generally prohibited from engaging in a pattern of judicial conduct that demonstrates prejudice to one party or partiality to the other party. Dixon v. Winn-Dixie Louisiana, Inc., 93-1627, p.3 (La.App. 4th Cir.5/17/94); 638 So.2d 306, 312, abrogated on other grounds by Hoskin v. Plaquemines Parish Government, 97-0061, p.5 (La.App. 4th Cir.12/1/97); 703 So.2d 207, 210, writs denied, 98-0270 and 98-0271 (La.4/30/98); 717 So.2d 1129. Improper conduct by the trial court constitutes reversible error, however, only when a review of the record as a whole reveals the conduct was so prejudicial that the complaining party was deprived of a fair trial. Dixon v. Winn-Dixie Louisiana, 638 So.2d at 316.
The trial court questioned the defense witnesses at length and made several inappropriate comments. For example, after questioning Allstate adjuster Valarie Guntz at length, the court commented, "[Y]ou know, you're pretty good at answering questions without answering what I ask you." She replied, "I'm not trying to do that." The court then stated, "I beg to differ. You know what that does to your credibility? ... I'm gonna tell you. [Allstate's counsel] ought to explain it to you, because when I ask questions and I don't get the answer then I'm wondering why not...."
While plaintiffs' counsel was conducting direct examination of Dennis Sells, Patterson's adjuster, the court interrupted and asked a spectator, "[D]o they send insurance people to school to learn how to not answer a question?" The spectator declined to answer, and Sells commented, "I don't think that was fair." The court replied, "Well, I'm gonna tell you what's not fair after this is over with."
Our review of the entire record reveals defendants were not deprived of a fair trial. While these remarks were unfortunate, they do not rise to the level of reversible error.

LIABILITY OF PATTERSON UNDER LOUISIANA REVISED STATUTE 22:1220
The trial court based its award of penalties, damages, and attorney fees against Patterson on its breach of duty under Revised Statute 22:1220 A to make a fair, prompt, and reasonable effort to *17 settle plaintiffs' claims. The trial court relied on the supreme court's original opinion in Theriot v. Midland Risk Insurance Company, 95-2895 (La.11/14/96); 683 So.2d 681, reversed on rehearing, 95-2895 (La.5/20/97); 694 So.2d 184, in which the court held an insurer could be liable for violating the broad general duties in LSA-R.S. 22:1220 A. After judgment was rendered in this case, the supreme court reversed itself on rehearing and held LSA-R.S. 22:1220 B was an exclusive list of the types of conduct for which damages and penalties can be sought by insureds and third-party claimants pursuant to LSA-R.S. 22:1220. Theriot v. Midland Risk Insurance Company, 95-2895, p.7 (La.5/20/97); 694 So.2d 184, 188. Plaintiffs did not even attempt to show Patterson committed one of the five violations set forth in 22:1220 B. Thus, the portion of the judgment awarding damages, penalties, and attorney fees against Patterson must be reversed.

LIABILITY OF ALLSTATE UNDER REVISED STATUTE 22:1220
The trial court found Allstate breached its duty to plaintiffs under LSA-R.S. 22:1220 A to fairly and promptly make a reasonable effort to settle their claims. As stated above, liability under LSA-R.S. 22:1220 cannot be based solely on a breach of the general duty set forth in Section A, but must be based on commission of one of the five acts enumerated in Section B. Plaintiffs contend that despite the lack of an explicit finding by the trial court, Allstate is liable under 22:1220 B(5) for arbitrarily and capriciously failing to pay its insureds' claims within sixty days after receipt of satisfactory proof of loss.
The jurisprudence interpreting LSA-R.S. 22:658, which also provides penalties for bad-faith failure to pay an uninsured motorist claim, is instructive in 22:1220 cases as well. In McDill v. Utica Mutual Insurance Company, 475 So.2d 1085, 1089 (La.1985), our supreme court explained that in a 22:658 case, a "satisfactory proof of loss" is "that which is sufficient to fully apprise the insurer of the insured's claim." The court further stated the insured must establish that the insurer received sufficient facts to show that the owner or operator of the other vehicle was uninsured or underinsured, that the other driver was at fault, and that the fault gave rise to damages. The insured must also establish the extent of his damages. McDill v. Utica Mutual Insurance Company, 475 So.2d at 1089. Once the insurer is fully apprised of an insured's claim, it is required to tender only that amount over which reasonable minds could not differ. McDill v. Utica Mutual Insurance Company, 475 So.2d at 1091-92.
In this case, Allstate did not dispute that Recard was at fault, that his fault gave rise to damages, and that his liability coverage was only $10,000.00. Allstate tendered $5,212.00 to plaintiffs on November 7, 1996. Allstate tendered the balance of its $10,000.00 limits on the day of trial, March 5, 1997.
In May 1996, plaintiffs' counsel sent Allstate's counsel a summary of medical expenses exceeding $6,000.00 and a summary showing Reed had missed 87 hours of work. Alllstate took issue with the form of proof provided by plaintiffs. The summary provided by plaintiffs' counsel included many medical expenses substantiated only by employee-explanation-of-benefits forms from Reed's health insurer. These forms did not list the amounts charged by the health-care providers or even the services provided; they simply showed the amount of Reed's co-payment. Also at issue was the form of proof of Reed's lost wages. Reed faxed Allstate a copy of her state-civil-service-personnel-action form showing her gross monthly salary. Allstate's adjuster responded that it needed a wage-loss-verification statement on company letterhead showing Reed's position, salary breakdown, hours and days missed due to the accident, and reason for missing work. It also wanted verification from a *18 doctor that Reed's absences from work were medically necessary.
In addition to questions about the form of proof of specials, Allstate had doubts about the extent of Reed's injuries. In 1994, Reed suffered from pain, numbness, and tingling radiating from her shoulders into her hands. An MRI of her neck in 1994 showed a mild disc bulge at C5/6 but no evidence of herniation. She also suffered from rheumatoid arthritis in her hands and was taking medication for that problem as needed. Her primary care physician, Dr. Paul B. Rachal, had prescribed an antidepressant for her before the accident, which Reed testified was probably because she had gone to his office crying because she was "always hurting."
After the 1995 accident, Reed again complained of pain in her neck radiating into her arms. An MRI showed no change in her cervical discs. An EMG performed by Dr. Charles E. Kaufman, a neurologist, showed C5/6 radiculopathy, but Dr. Steven M. Bailey, a neurosurgeon who examined her a few weeks later, found no evidence of true radiculopathy. Allstate took the position that Reed suffered only from a shortterm soft-tissue injury and perhaps an exacerbation of her preexisting problems.
By the time Allstate prepared answers to plaintiffs' interrogatories on November 22, 1996, it had received over $10,000.00 in medical bills, had subpoenaed Reed's medical records, and had deposed Kaufman. Allstate knew Reed had had physical therapy and epidural steroid injections to treat her pain arising from the accident, and it knew Kaufman believed her pain following the 1995 accident was different from the pain he had treated her for in 1994. It also knew that, according to Kaufman, blood tests showed her pain was not caused by arthritis. While it may not have had all the information it wanted on her lost-wages claim, Allstate knew Reed had missed work for doctors' visits and physical therapy. At this point, Allstate clearly had a duty to tender an amount over which reasonable minds could not differ.
Allstate had tendered $5,212.00 on November 7, 1996, but it did not tender the balance of its policy limits until the day of trial. Was it obligated to tender more than $5,212.00 before trial in light of the information it had? Or was a tender of $5,212.00 reasonable? There is no explanation in the record of how Allstate arrived at the $5,212.00 figure. Reed's special damages exceeded the underlying liability coverage. Disregarding all the duplicate bills listed in the November 22, 1996 answers to interrogatories, Reed's medical expenses totaled approximately $10,700.00. Allstate was aware Reed also had a lost-wages claim. Thus, Allstate's $5,212.00 tender must have allowed only $2,000.00 to $3,000.00 for general damages. Even though it had questions about the extent and causation of Reed's injuries, we believe Allstate's failure to tender more than $5,212.00 until the day of trial was not reasonable.[1]Compare Fontana v. Louisiana Sheriffs' Automobile Risk Program, 96-2752, p. 5 (La. App. 1st Cir.6/20/97); 697 So.2d 1037, 1040, writ denied, 97-2363 (La.1/9/98); 705 So.2d 1088.
Allstate's tender of the balance of its policy limits on the morning of trial was far more than sixty days after it had satisfactory proof of loss. It thus breached its duty under LSA-R.S. 22:1220 A by committing one of the specific acts enumerated in 22:1220 B, i.e., by arbitrarily and capriciously *19 failing to pay a claim due its insured within sixty days after receipt of satisfactory proof of loss. The trial court thus correctly found Allstate was subject to sanction for its conduct.
Allstate contends that even if it committed a sanctionable act, the trial court erred in awarding damages of $2,000.00 and an additional penalty of $5,000.00. This court has held that for an insurer to be liable for damages under LSA-R.S. 22:1220, the insured must prove he sustained actual general or special damages as a result of the insurer's breach. Carter v. Davis, 95-2198, pp.3-4 (La.App. 1st Cir.5/10/96); 673 So.2d 362, 364-65, writ denied, 96-1449 (La.6/27/97); 696 So.2d 991.
Reed testified she and her husband "live from paycheck to paycheck," and any extra expense "would put [them] in a bind." When she went to the emergency room following the accident, she did not make a claim under her health insurance. Because of that, the hospital sent her a bill with a payment schedule three or four months after the accident. (The bill was for $492.38.) She got behind on the payments, and the hospital turned it over to a collection agency. She also testified that one month she had to borrow funds from the credit union to pay the note on her van. Finally, she testified she had $1,108.73 in out-of-pocket expenses for her health insurance co-payments and other items her health insurance did not cover.
The trial court found Allstate's breach of duty to plaintiffs caused a financial demand that "put a strain on the family." It found plaintiffs had proved emotional distress and awarded $2,000.00 in damages. We find no abuse of discretion in this award. Thus, we affirm the award of damages of $2,000.00 and the concomitant penalty of $5,000.00.[2]

LIABILITY OF ALLSTATE FOR ATTORNEY FEES
Allstate contends the trial court erred in awarding plaintiffs $10,000.00 in attorney fees. The trial court does not state by what authority it made that award. Allstate argues that if the attorney fees award was made pursuant to LSA-R.S. 22:1220, the trial court committed legal error because LSA-R.S. 22:1220 does not permit an award of attorney fees. Further, Allstate contends that plaintiffs did not allege sufficient facts in their petition to assert a claim for attorney fees under LSA-R.S. 22:658, and if they did allege sufficient facts, any such allegations were without merit.
Attorney fees are not allowed in Louisiana except where authorized by contract or statute. Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756, 763 (La.1985). Attorney fees statutes are penal in nature and must be strictly construed. Cracco v. Barras, 520 So.2d 371, 372 (La.1988).
We agree that LSA-R.S. 22:1220 does not expressly provide for attorney fees.[3] However, we find that the award of attorney fees under LSA-R.S. 22:658 was proper.
LSA-R.S. 22:658 provides in pertinent part:
A. (1) All insurers ... shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
* * *
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor ... when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer *20 to a penalty ... together with all reasonable attorney fees....
When items of special damage are claimed, the litigant must specifically allege that claim in the petition. LSA-C.C.P. art. 861. Statutory penalties and attorney's fees are items of special damage which must be specifically alleged. Hardy v. Cumis Insurance Company, 558 So.2d 625, 628 (La.App. 1st Cir.), writ denied, 559 So.2d 1385 (La.1990). Although plaintiffs did not cite to LSA-R.S. 22:658 in their pleadings, we find plaintiffs specifically alleged their entitlement to an award of attorney fees under LSA-R.S. 22:658. In their two supplemental and amending petitions, plaintiffs alleged facts which, if proven, demonstrated that Allstate received satisfactory proof of loss and arbitrarily failed to tender uninsured motorist benefits due under the policy within 30 days after receipt of the notice. Plaintiffs further alleged that this conduct by Allstate rendered Allstate liable for attorney's fees. This was sufficient to specifically assert a claim for attorney fees without expressly citing LSA-R.S. 22:658.
In so holding, we are aware of the previous decision by this court in Arnone v. Anzalone, 481 So.2d 1047 (La.App. 1st Cir.1985), wherein a panel of this court reversed a trial court's award of attorney fees under LSA-R.S. 22:658. The award was reversed because the plaintiff "did not specifically allege [the insurer's] action was arbitrary, capricious or without probable cause, nor did [the plaintiff] pray for statutory [attorney fees] under LSA-R.S. 22:658." Arnone v. Anzalone, 481 So.2d at 1050. We do not interpret this opinion as requiring a party claiming entitlement to statutory attorney fees to cite the specific statute under which the attorney fees are sought. In our opinion, the award was reversed in Arnone because there were no allegations in the pleadings to establish that any of the elements of LSA-R.S. 22:658 were satisfied. Specifically, the plaintiff in Arnone failed to allege that the insurer acted arbitrarily, capriciously or without probable cause and further failed to allege that he was entitled to an award of attorney fees. Accordingly, unlike the Reeds, the plaintiff in Arnone did not specifically allege entitlement to attorney fees under LSA-R.S. 22:658.
We are further cognizant of Batson v. South La. Medical Center, 97-1382 (La. App. 1st Cir.9/25/98); 724 So.2d 782, wherein another panel of this court affirmed an award of attorney fees under LSA-R.S. 22:1220 by redefining/labeling the trial court's award of attorney fees as "damages." Therefore, whether the attorney fees in this case are awarded under LSA-R.S. 22:658 or as "damages" under 22:1220, we believe the award should be affirmed.

QUANTUM
Recard contends the trial court abused its discretion in awarding $15,000.00 for general damages and $2,303.00 in lost wages to Virginia Reed, and in awarding $1,000.00 for loss of consortium to Daniel Reed.
Recard asserts Reed suffered "at most, a three month cervical strain superimposed on her [preexisting] injury." Recard relies on the testimony of Bailey, the neurosurgeon who saw Reed three months after the accident and found no objective symptoms of nerve or disk involvement. His diagnosis, however, was a musculoskeletal problem related to the injury to the muscles and ligaments in the neck, resulting in neck pain and radiating arm pain. He suggested she use over-the-door traction and return to see him if the problems persisted. Nowhere does Bailey indicate Reed had returned to her pre-accident condition at that point.
Following the accident, Reed saw Rachal, her family doctor, approximately once a month. He prescribed muscle relaxers, pain medication, and medication for depression caused by the chronic pain. Over the course of a year's treatment he also recommended home treatment with a heat *21 pack, physical therapy, home traction, a TENS unit, and a special bra. Rachal sent her to Kaufman, who ordered epidural steroid injections. Rachal also had her return to Bailey, who ordered a myelogram. In October 1996, Rachal recommended Reed take leave from work to give her muscles time to heal, as she was driving an hour each way to and from work, and then going home and dealing with her responsibilities as a wife and mother of four children.
In January 1997, Rachal stated in his deposition testimony that Reed had not returned to her pre-accident condition, although her condition had improved approximately 40% from October to January, while she was off work. He thought she would improve over the following three to six months but would always have "a little discomfort."
Based on all the evidence in the record, we find the trial court's award of $15,000.00 in general damages was not an abuse of discretion but was amply supported by the medical testimony.
Recard also contends the trial court erred in awarding Reed lost wages for time off work other than for doctor visits. Recard states in his appellate brief that "no medical physician indicated that Mrs. Reed was unable to perform her job duties...." Reed testified that in addition to missing work for doctor visits and physical therapy, she sometimes left work early because of pain. She also testified she took twelve weeks of unpaid leave at the recommendation of Rachal, her treating physician. Rachal explained he recommended the leave because the strain of two hours of driving each day, working in a full-time job, and trying to live a normal family life was not allowing her muscles time to rest. We find no abuse of discretion in the award of lost wages to Reed.
Finally, Recard complains of the trial court's award of $1,000.00 to Daniel Reed for loss of consortium. Daniel Reed testified his wife's injuries had affected their life in the bedroom "very much." He testified he and his thirteen-year-old son had to take over dishwashing, cleaning the kitchen, sweeping, and mopping because his wife was no longer able to do it. Reed also testified she and her husband had to give up their bowling-league activities because she was in too much pain to bowl. We find no abuse of discretion in the trial court's loss of consortium award.

CONCLUSION
For the foregoing reasons, the judgment of the trial court against Recard is affirmed. The judgment against Patterson Insurance Company is reversed, and judgment is rendered dismissing plaintiffs' claims against it. The portion of the judgment against Allstate Insurance Company awarding damages, penalties and attorney fees is affirmed. Costs of this appeal are assessed one-half to plaintiffs and one-half to Allstate and Recard.
REVERSED AND RENDERED IN PART, AFFIRMED IN PART.
SHORTESS, C.J., concurs in part and dissents in part with reasons.
WHIPPLE, J., concurs. The conduct which prompted the award of penalties and attorney's fees was not the conduct of the attorney herein. Instead, the misconduct of the adjustors in avoiding payment through a series of diversionary tactics justified the trial court's award herein.
SHORTESS, C.J., dissenting in part.
I disagree with the majority's affirmance of the award of attorney fees against Allstate. The majority correctly recognizes that statutory penalties and attorney fees are items of special damages that are allowed only when authorized by contract or statute and must be specifically alleged.
Nowhere in plaintiffs' petitions is Louisiana Revised Statute 22:658 mentioned. Nor do plaintiffs allege entitlement to penalties or attorney fees under 22:658 at trial or on appeal. The entire thrust of plaintiffs' *22 claim for penal damages was that Allstate breached its general duty under 22:1220(A) to make a reasonable effort to settle claims with the claimant, a duty which the supreme court has now recognized does not give rise to penalties if breached. Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184.
This court has long held that to assert a claim under 22:658, the plaintiff must either specifically pray for statutory penalties under that statute, or he must allege the necessary elements of a claim under 22:658, i.e., that he presented satisfactory proof of loss to the insurer, that his claim was not paid within the statutory time period, and that the insurer's action was arbitrary, capricious, or without probable cause. Hardy v. Cumis Ins. Co., 558 So.2d 625, 628 (La.App. 1st Cir.1990); Arnone v. Anzalone, 481 So.2d 1047, 1050 (La.App. 1st Cir.1985); Mix v. Mougeot, 446 So.2d 1352, 1356 (La.App. 1st Cir. 1984). If the plaintiff fails either to cite the statute or to allege sufficient facts, the defendant insurer is denied a reasonable opportunity to defend the claim under that penal statute or to be notified that the penalty claim was at issue. Mix v. Mougeot, 446 So.2d at 1356.
The entirety of the allegations against Allstate in the petitions are as follows. In the "Supplemental, Amended and Restated Pleading," plaintiffs allege:
11.
On May 24, 1996, the plaintiff sent to Allstate Insurance Company documentation reflecting that:
A. That Virginia C. Reed's medical expenses were in the amount of $6,119.37.
B. That Virginia C. Reed had lost eighty-seven (87) hours of work and wages as a result of the injury.
C. That the defendant Recard's liability policy limits were in the amount of $10,000.00.
12.
Allstate has arbitrarily refused to make a settlement with the plaintiffs pursuant to the uninsured motorist coverage.
In "Plaintiffs' Second Supplemental and Amended Pleading," they alleged:
17.
On May 8, 1996, plaintiffs sent a demand to Allstate for the payment of policy limits pursuant to the uninsured motorist coverage.
a. Allstate refused to accept plaintiffs' offer;
b. Allstate refused to make a counter-offer;
c. Allstate refused to make a tender of any amount to the plaintiffs until November 8, 1996, when the plaintiffs received a payment of $5,212.00.
18.
Allstate's conduct was in bad faith and a bre[a]ch of its obligation to plaintiffs and, as such, renders Allstate liable for additional damages, penalties and attorney's fees.
Conspicuous by their absence are specific allegations that satisfactory proofs of loss were presented to Allstate and that Allstate failed to make a tender within thirty days. The allegations that Allstate "was in bad faith" and "refused to make a settlement" refer to the insurer's "duty of good faith" to settle claims set forth in 22:1220; the pleadings do not comply with the requirements of 22:658, as aforesaid.
In Lanier Business Products, Inc. v. First National Bank, 388 So.2d 442, 446 (La.App. 2d Cir.1980), the court stated, "[I]t would not be just, legal or proper to award on appeal an item of special damage not claimed or put at issue in any manner in the trial court." This case was pleaded and tried as a case under Revised Statute 22:1220, which does not provide for attorney fees. See Spear v. Tran, 96-1490, pp. 7-8 (La.App. 4th Cir.9/18/96), 682 So.2d *23 267, 271, writ denied, 96-3024 (La.2/7/97), 688 So.2d 500. In my opinion, it is not just, legal or proper to award attorney fees under Revised Statute 22:658 against Allstate in this case.
I also disagree with the majority's application of Batson v. South Louisiana Medical Center[1] to the facts of this case. I do not agree with the Batson panel that the phrase "damages" in a penal statute can be interpreted to include attorney fees. That holding flies in the face of long-settled Louisiana law.[2] But if that case is to be the law of this circuit, it should be limited to the peculiar facts found therein, and not applied broadly so as to permit the recovery of attorney fees in all cases where penalties are awarded under Revised Statute 22:1220.
I respectfully dissent from the affirmance of the award of attorney fees against Allstate.
NOTES
[1] We need not consider Allstate's argument that it had no duty to make a tender until after Patterson had paid its limits. This argument is based on a provision in Allstate's policy that uninsured motorist benefits are not owed until the underlying liability benefits are paid. However, Patterson deposited its limits into the registry of the court on October 15, 1996, which is before the date we are using as the date by which Allstate had satisfactory proof of loss. Moreover, we note, that in Nelson v. Allstate Insurance Company, 464 So.2d 1015, 1019-20 (La.App. 1st Cir.1985), this court declared that a similar policy provision was invalid.
[2] LSA-R.S. 22:1220 C provides the court may impose a penalty of twice the damages or $5,000.00, whichever is greater.
[3] See Batson v. South La. Medical Center, infra.
[1] 97-1382 (La.App.1st Cir. 9/25/98), 724 So.2d 782.
[2] See General Motors Acceptance Corp. v. Meyers, 385 So.2d 245 (La.1980) (a successful litigant cannot recover attorney fees except where authorized by statute or contract, even in the case of bad faith conduct); Pineville Police Officers' Ass'n v. City of Pineville, 96-785 (La.Ap.3d Cir.4/22/98), 713 So.2d 536 (even the language "any and all damages of any character" could not be expanded to include attorney fees).