11 YELYERTON, J.
William and Judy McIntosh, individually and on behalf of their minor daughter, Dusty, filed a petition for damages as a result of alleged acts of sexual molestation inflicted by William Walker, Jr. (Billy) several years earlier. The defendants remaining at the trial were Billy’s parents, William Walker, Sr. and Donna Máxime Aucoin; Billy’s stepmother, Tena Walker; and Mr. Walker’s insurer, State Farm Fire & Casualty Company. Dr. Sam Williams was dismissed right before trial 1¿when his exceptions of prescription and motion for summary judgment were granted. The remaining defendants were dismissed when the trial judge granted their motion for involuntary dismissal at the close of the plaintiffs’ case. The McIntosh family appeals these dismissals.
FACTS
In the late 80’s and early 90’s the Mcln-toshes and Walkers were good friends. Dusty, who was nine years old in 1989, was best friends with the Walkers’ daughter, Tiffany. Tiffany’s brother, Billy, who was 15 in 1989, was friends with one of Dusty’s brothers. The Mclntoshes and Walkers attended their children’s sporting events together. Dusty would often spend the night with Tiffany. This would include staying with Tiffany at her father’s house and at her mother’s house. Mr. Walker and Donna were previously married, but had since divorced. He was now remarried to Tena.
In early 1990, Tiffany told Tena that Billy had “pinched” her on the bottom. This information was also relayed to Mr. Walker. At the time there was a custody dispute going on between Mr. Walker and Donna. Mr. Walker called his ex-wife to inform her of the incident. Shortly thereafter, the children went to Donna’s house for their scheduled visitation. At that time Donna questioned both Tiffany and Billy about the incident. Donna then made an appointment for the children with a psychiatrist in Houston but did not tell her ex-husband because, according to Donna, they were not on speaking terms. When the children came back, Billy told his father about the doctor’s appointment. Billy did not go to his mother’s house again.
| aSubsequently, Mr. Walker’s attorney informed him that Donna claimed that an inappropriate touching occurred and that a friend might also be involved. The friend’s name was not mentioned. It had been during the last weekend that the children stayed with him that Dusty had spent the night, so Mr. Walker left the attorney’s office and drove straight to the Mclntoshes’ house. Mr. Walker told the Mclntoshes about the allegations and asked them to ask Dusty about it. It was mentioned during the conversation that this might be a “stunt” by his ex-wife.
When Dusty was questioned by her mother about whether Billy had touched her in any way, Dusty denied that anything happened. Billy denied that he had inappropriately touched anyone.
Shortly thereafter, in the Walkers’ domestic proceeding, the children were ordered to undergo psychological evaluations with Dr. Sam Williams. During these evaluations in April, Tiffany told Dr. Williams that her brother had inappropriately touched her. Tiffany also told Dr. Williams that she found her brother laying in bed next to Dusty one time. Dr. Williams saw Tiffany on only this one occasion.
*757 Billy also saw Dr. Williams. At first he told Dr. Williams that he was looking for a pencil when his sister caught him in the room with her and that he was playing Nintendo on the corner of the bed when his sister found him in the room with Dusty. Billy eventually admitted to Dr. Williams that he did molest his sister, but never admitted to molesting Dusty. Dr. Williams saw Billy four times.
After these events four years passed. In June 1994 Donna obtained a copy of Dr. Williams’ records on Tiffany. She then turned these records over to the 14McIntoshes. The information in these records caused the Mclntoshes to ask Dusty again whether Billy had done anything to her. This time Dusty professed that Billy had inappropriately touched her.
The present suit for damages was filed by the Mclntoshes on December 30, 1994. They sued Billy Walker, then a major, for allegedly molesting Dusty. Suit was filed against his mother and father because Billy was a minor at the time of the acts. His parents and stepmother were allegedly liable for the failure to properly supervise and protect Dusty when she was in their homes. It was also alleged that Billy’s father and stepmother and Dr. Williams failed to disclose information about the alleged molestation of Dusty. State Farm was sued as Mr. Walker’s insurer.
The Mclntoshes appeal the involuntary dismissal of their suit claiming that they did not receive a fair trial. They also appeal the granting of Dr. Williams’ exception of prescription and motion for summary judgment.
INVOLUNTARY DISMISSAL
The Mclntoshes claim that the trial was not fair. Referring to numerous comments of the trial judge, they argue that the trial judge was unwilling to weigh the evidence and had prejudged this case. They argue that he required them to put Dusty on the stand, and when they did, he dismissed the case. They also complain that the judge’s ruling erroneously placed an undue burden on a plaintiff to submit corroborating evidence when two witnesses contradict each other. The Mcln-toshes claim they were denied a complete and fair hearing before the trial judge rendered judgment and that this denial requires that we reverse.
| ¡¿Pointing to comments made by the trial judge before the proceedings began, as well as during the proceedings, the Mcln-toshes complain that the trial judge decided the case before he even heard Dusty’s testimony. Prior to trial the Mclntoshes had filed a motion to recuse the trial judge based on comments he made during a status conference. This was denied. The parties then went to trial on the matter.
The Mclntoshes fully tried their case. All witnesses that they wanted to present to the court were allowed to testify. The Mclntoshes presented evidence and testimony over the course of three days.
The trial court is afforded discretion in conducting a trial, but that discretion is circumscribed by considerations of justice and fairness.. The trial court is generally prohibited from engaging in a pattern of judicial conduct that demonstrates prejudice to one party or partiality to the other party. Improper conduct by the trial court constitutes reversible error, however, only when a review of the record as a whole reveals the conduct was so prejudicial that the complaining party was deprived of a fair trial.
Reed v. Recard, 97-2250, p. — (La.App. 1 Cir. 11/18/98), — So.2d -, -, 1998 WL 799692, writ denied 98-3070 (La.2/12/99), 738 So.2d 572. (citations omitted)
After reviewing the record, we find no support for the contention that the plaintiffs did not get a fair trial. There were just as many times that the trial judge ruled in favor of the Mclntoshes on evi-dentiary matters, if not more times, as when he ruled for the defendants. The Mclntoshes listed specific comments of the trial judge in their brief, which when taken *758 out of context and apart from the whole proceedings, do sound one-sided. However, in reading the record, we find that the trial judge repeatedly stated that he had not made up his mind and was very open with [fithe Mclntoshes about the kind of evidence he was looking for. Consistently the trial judge ruminated on the difficulties he found with the case and that he was not sure how he was going to rule. These ad libitum ruminations were not prejudgments; they were no more than natural reactions to a troublesome case.
The trial judge did not issue a final ruling until the completion of the Mcln-toshes’ case when he was presented with the motions for involuntary dismissal by the defendants. It was at that time that the trial judge ruled that the Mclntoshes had failed to prove their case.
The plaintiffs got a fair trial. The plaintiffs do not specifically assign manifest error in the granting of the motions for involuntary dismissal. However, we will address the issue of whether the trial judge properly granted the motions for involuntary dismissal.
Article 1672(B) of the Louisiana Code of Civil Procedure provides for the involuntary dismissal of a plaintiffs case when a motion is made by the defendant as follows:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
|7In Mayes v. State, 96-789, p. 4 (La. App. 3 Cir. 12/11/96), 685 So.2d 497, 500, writ denied, 97-0113 (La.3/7/97), 689 So.2d 1376 (citations omitted), this court explained the standard of review applicable to an involuntary dismissal as follows:
The trial court has much discretion in determining whether to grant a motion for involuntary dismissal. In making a determination on a motion for involuntary dismissal, the trial court is not required to review the evidence in the light most favorable to the plaintiff. The judge is only required to weigh and evaluate all of the evidence presented up to that point and grant a-dismissal if the plaintiff has failed to establish his claim by a preponderance of the evidence. An involuntary dismissal authorized by La. Code Civ.P. art. 1672 should not be reversed in the absence of manifest error.
“Proof by a preponderance of the evidence means that, when taken as a whole, the evidence shows that the fact or cause sought to be proved is more probable than not.” Darton v. Kroger Co., 30,771, p. 2 (La.App. 2 Cir. 8/25/98), 716 So.2d 974, 976.
The trial judge specifically ruled that:
[Tjhere are credibility problems with almost everybody in this case, and certainly disparities in testimony, and a lot of missing things. I just don’t think the plaintiffs proved their case. I don’t think anybody proved anything except that everybody is mad at each other....
It is apparent from reading the Mcln-toshes’ brief that they believed they had proven by a preponderance of the evidence that Billy molested Dusty. The Mclntosh-es were allowed to present all of their evidence. Because the defendants’ case was based on a denial, it is doubtful that any additional evidence would have been necessary had the defendants been allowed to present their case. We agree with | sthe trial judge that the case boiled down to Billy saying that he never molested Dusty versus Dusty saying that she was molested.
There was other evidence at trial offered by the Mclntoshes in support of their case, *759 but it did not prove that a molestation occurred. It is true that Tiffany reported to Dr. Williams that she saw her brother laying next to Dusty in the bed. However, she never saw any inappropriate touching. Billy denied it happened in 1990 and continued to deny it at the trial in 1998.
Dusty initially stated that nothing happened in 1990. We understand that psychology reports offer different valid reasons that children may deny these happenings. However, her psychiatrist testified that he was under the impression that there were only‘two incidents that occurred. By the time suit was filed, Dusty claims that it happened about ten times.
It is also not disputed that Billy admitted that he molested Tiffany. But once again, he never admitted it happened with Dusty. Just because he did it to Tiffany does not mean he molested Dusty. We agree with the trial court that there was not a preponderance of the evidence establishing that Billy molested Dusty.
With this finding there is no need to address the remaining assignments of error, whether the trial court was correct in granting Dr. Williams’ exception of prescription and motion for summary judgment. A finding that there is not sufficient laproof of a molestation means that Dr. Williams could not be held hable even if these motions had been improperly granted.
For the reasons set forth in this opinion, we affirm the judgments of the trial court. Cost of this appeal are assessed to the appellants.
AFFIRMED.