694 So.2d 184 (1997)
Dianna M. THERIOT, Individually and on Behalf of Her Minor Daughter, Gina M. Theriot
v.
MIDLAND RISK INSURANCE COMPANY, et al
No. 95-C-2895.
Supreme Court of Louisiana.
May 20, 1997.
*185 Byron Andrew Richie, Charles Vernon Richie, Richie & Richie, Shreveport, for Applicant.
Christopher Paul Ieyoub, Plauche, Smith & Nieset, Clayton Arthur Larsh Davis, James David Cain, Jr., Hunter William Lundy, Lake Charles, for Respondent.
Christopher R. Lawler, Metairie, Bryan Scott Skillman, New Orleans, for amicus curiae Allstate Ins. Co., National Association of Independent Insurance.
Timothy G. Schafer, New Orleans, for amicus curiae United Service Automobile Association.
Cliffe Edward Laborde, III, Lafayette, for amicus curiae Louisiana Association Defense Counsel.
Elizabeth Baker Murrill, Baton Rouge, for amicus curiae Louisiana Trial Lawyers Association.

ON REHEARING
MARCUS, Justice.[*]
Gina Theriot, a minor, was injured and her vehicle rendered a total loss when her car was struck in the rear by a truck driven by Brian Gaspard. At the time of the collision, Theriot had stopped her car to avoid colliding with a Camaro driven by Harry Thornton, which had spun out of control in the roadway ahead during a heavy rain. Dianna Theriot, mother of Gina Theriot, made a claim individually and on behalf of Gina Theriot for property damage, expenses and personal injuries against the insurers of both Thornton and Gaspard.
Thornton's insurer, Midland Risk Insurance Company, took the position that the accident was caused by the superseding fault of Gaspard, the driver of the vehicle that rear-ended Theriot's car. Gaspard's insurer, Shelter Insurance Company, took the position that Thornton was at fault for having lost control of his vehicle, thereby setting in motion the chain of events that led to the collision. Both insurers agreed that Gina Theriot bore no responsibility for the accident.
Being unable to agree on the proper allocation of fault between their respective insureds, Midland offered to pay ten percent of the property damage claim and Shelter offered to pay thirty percent of the claim. Plaintiff rejected both offers and pursued her claims in court against Gaspard, Thornton, and their respective insurers for damages resulting from the collision. She also sought damages and penalties pursuant to La. R.S. 22:1220, asserting that both insurers had breached a statutory duty to adjust her claim fairly and promptly and to make reasonable efforts to settle the claim.
The insurers answered denying that La. R.S. 22:1220 imposes duties that run directly in favor of third-party claimants such as the plaintiff in this case and alternatively argued that the statute provides a cause of action only for violations of the specific acts listed in La. R.S. 22:1220, B. Plaintiff admitted that Midland had not committed any of the enumerated acts listed in Subsection B, but *186 claimed that Midland was nevertheless liable for violating broad general duties set forth in Subsection A of the statute. She further asserted that the list of prohibited acts in Subsection B is illustrative only.
After a trial on the merits, the trial judge apportioned fault equally between Gaspard and Thornton for causing the accident. He awarded general and special damages incurred as a result of the collision but refused to make any award pursuant to La. R.S. 22:1220.[1] On plaintiff's appeal from the refusal to award damages and penalties pursuant to La. R.S. 22:1220, the court of appeal reversed, concluding that Midland had breached a broad affirmative duty imposed by the statute in favor of both insureds and third-party claimants to make reasonable efforts toward the settlement of all claims. The court of appeal further concluded that the list of prohibited actions in La. R.S. 22:1220, B is illustrative rather than exclusive. It awarded damages and penalties in the amount of $6000.00 against Midland only.[2] Upon the application of Midland, we granted certiorari[3] and affirmed the ruling of the court of appeal.
Upon Midland's application, we granted a rehearing to review our prior holding.[4] The sole issue before us on rehearing is the proper interpretation and application of La. R.S. 22:1220. Specifically, we are called upon to answer two questions: 1) does La. R.S. 22:1220 create a right of action for damages and penalties in favor of third-party claimants?; and 2) if so, is the list of prohibited acts contained in La. R.S. 22:1220, B an exclusive or illustrative list of the activities for which damages and penalties can be awarded under the statute?
The function of statutory interpretation and the construction to be given to legislative acts rests with the judicial branch of the government. Touchard v. Williams, 617 So.2d 885 (La.1993). The starting point in the interpretation of any statute is the language of the statute itself. Touchard, 617 So.2d at 888. Ambiguous text is to be interpreted according to the generally prevailing meaning of the words employed. La. Civ. Code art. 11. Their meaning may be sought by consulting other laws on the same subject matter. Succession of Baker, 129 La. 74, 55 So. 714 (1911). Where a part of an act is to be interpreted, it should be read in connection with the rest of the act and all other related laws on the same subject. Thibaut v. Board of Com'rs of Lafourche Basin Levee Dist., 153 La. 501, 96 So. 47 (1923).
We have long held that the paramount consideration in interpreting a statute is ascertaining the legislature's intent and the reasons that prompted the legislature to enact the law. Garrett v. Seventh Ward General Hosp., 95-0017 (La.9/22/95); 660 So.2d 841; Touchard, 617 So.2d at 888. Legislative intent is the fundamental question in all cases of statutory interpretation; rules of statutory construction are designed to ascertain and enforce the intent of the statute. State v. Piazza, 596 So.2d 817 (La.1992).
One particularly helpful guide in ascertaining the intent of the legislature is the legislative history of the statute in question and related legislation. Malone v. Cannon, 215 La. 939, 41 So.2d 837 (1949). Laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the same subject. City of New Orleans v. Board of Sup'rs., 216 La. 116, 43 So.2d 237 (1949). We give harmonious effect to all acts on a subject when reasonably possible. Piazza, 596 So.2d at 819.
We have generally held that statutes subjecting insurers to penalties are to be considered penal in nature and should be strictly construed. Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983). We have also recognized that laws in derogation of established rights and principles are to be strictly construed. Where there is any doubt about the intent or meaning of a law in derogation of long accepted rules, the statute is given the *187 effect that makes the least rather than the most change in the existing body of the law. Touchard, 617 So.2d at 892. Moreover, the time honored maxim, expressio unius et exclusio alterius is yet another helpful guide. It teaches us that when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have been easily included in the statute, is deemed intentional. State v. Louisiana Riverboat Gaming Com'n., 94-1872, 1914 (La.5/22/95); 655 So.2d 292. And we have held that the legislature is presumed to act with full knowledge of well settled principles of statutory construction. Monteville v. Terrebonne Par. Con. Gov't, 567 So.2d 1097 (La.1990).
With these established principles of statutory interpretation in mind, we turn our attention to La. R.S. 22:1220 which provides in pertinent part:
§ 1220. Good faith duty; claims settlement practices; cause of action; penalties
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after the receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

....
The first question presented for our review, whether or not the statute creates a right of action directly in favor of third-party claimants, was implicitly answered in our decision in Manuel v. La. Sheriff's Risk Mgmt. Fund, 95-0406 (La.11/27/95); 664 So.2d 81. The issue before us in Manuel was whether La. R.S. 22:1220, passed in 1990, could be used to impose damages and penalties in favor of a third-party claimant on an insurer who had issued a contract of insurance before the passage of the statute. We concluded that the statute could be applied to an insurer's failure to pay a settlement to a third-party claimant within thirty days after an agreement was reduced to writing, conduct specifically enumerated in La. 22:1220, B(2), when the failure to pay occurred after the passage of the statute. Our analysis of the statute suggested that a right of action was created directly in favor of third-party claimants in certain circumstances. We reach the same conclusion here. The first sentence of Subsection A of the statute recognizes the jurisprudentially established duty of good faith and fair dealing owed to the insured, which is an outgrowth of the contractual and fiduciary relationship between the insured and insurer. Holtzclaw v. Falco, Inc., 355 So.2d 1279 (La.1977). The second sentence of Subsection A, by its plain wording, applies to both insureds and "claimants."
*188 The definitional section of Title 22, Part XXVI, in which the statute in question appears, defines "insured" as the party named on the policy. La. R.S. 22:1212, B. Had the legislature meant to address only the rights of "insureds," it would have been unnecessary to use the phrase "insureds or claimants" in the act. Moreover, Subsection C of the act, which stipulates the penalties which may be awarded for its violation, provides that in addition to the damages to which a "claimant" is entitled, the "claimant" may be awarded penalties.[5] We have no trouble concluding that the legislature intended to provide a right of action directly in favor of third-party claimants in certain situations when it enacted La. R.S. 22:1220. We are unwilling to suppose that the legislature failed to understand the distinction between "insureds" and "claimants" when it enacted La. R.S. 22:1220.[6]
The next issue presented for our determination is the scope of the cause of action created in La. R.S. 22:1220. Subsection B of the statute provides that:
Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:....
The act then lists five specific types of conduct deemed unacceptable. Focusing first on the plain wording of the statute, we believe that where, as here, the legislature lists specific prohibited acts, and couples that list with a concomitant scienter requirement, those acts and those alone are the intended targets of the damages and penalties provided. The specification that "any one of the following acts" constitutes a breach suggests that other acts do not fall within the parameters of this statute. This narrow interpretation comports with the established principle of statutory interpretation referenced above, expressio unius et exclusio alterius. Moreover, it is in keeping with the principle that penal statutes are to be strictly construed.
Plaintiff argues that Subsection A creates a broad duty to third-party claimants to make a reasonable effort to settle all claims and that the enumerated acts in Subsection B are merely illustrative. We do not agree. If Subsection A were intended to create a cause of action for all manner of breaches of a broad duty, there would have been no need for illustrations. Plaintiff's interpretation of Subsection B renders it mere surplusage. Thus, the wording and structure of the act strongly suggest that the legislature intended Subsection B to constitute an exclusive list of the types of conduct for which damages and penalties can be sought by insureds and third-party claimants pursuant to the statute.
In analyzing the statute, we have also reviewed the legislative history of this and related acts, the purpose for the statute's enactment, its function within the statutory scheme, and the extent to which the interpretation advanced by the plaintiff would constitute a radical departure from established law. All of these avenues of review reinforce our conclusion that the only acts which give rise to a cause of action for violation of La. R.S. 22:1220 are the specific acts enumerated in Subsection B(1)-(5). Our review of legislative history has focused primarily on the activity of the legislature in 1989 and 1990 with respect to the "Unfair Trade Practices" Part of the Insurance Code, in which La. R.S. 22:1220 is found, and the closely related penalty provisions in La. R.S. 22:658. In 1989, as part of legislative Act No. 638, the legislature made changes to La. R.S. 22:658, which had long been the sole basis for actions for penalties and attorney fees by insureds against their insurers for refusal to promptly and fairly adjust and pay claims other than life, health and accident claims. Our courts had never awarded damages or penalties for alleged "badfaith settlement practices" in favor *189 of third-party claimants against insurers under statutory law or under general tort or contract principles. Bellah v. State Farm Fire & Casualty Ins. Co., 546 So.2d 601 (La.App. 3d Cir.1989); Williams v. State Farm Mutual Automobile Ins. Co., 517 So.2d 849 (La.App. 3d Cir.1987). In 1989, the legislature for the first time created a statutory cause of action in La. R.S. 22:658 in favor of third-party claimants in very limited circumstances. It added to La. R.S. 22:658 a provision that in the event of a written agreement to settle a third-party property damage or medical expense claim, the amount of settlement had to be paid within thirty days, in default of which the third-party claimant could seek penalties and attorney fees. La. R.S. 22:658, A(2). The 1989 amendments to La. R.S. 22:658, A also added a provision that:
(4) All insurers shall make a written offer to settle any property damage claim within thirty days after receipt of satisfactory proofs of loss of that claim. [Emphasis added].[7]
The 1989 amendments left some doubt as to whether third-party claimants could also seek penalties and attorney fees under La. R.S. 22:658, A(4) for an insurer's failure to make an offer of settlement. If so, La. R.S. 22:658 would have imposed, albeit for property claims only, penalties for the breach of the same kind of broad duty to attempt settlement with third-party claimants that plaintiff suggests was created in La. R.S. 22:1220 with regard to all kinds of claims. Yet in 1990, in the same legislative session in which La. R.S. 22:1220 was enacted, the legislature amended La. R.S. 22:658, B to make it clear that La. R.S. 22:658, A(4) was not a basis for a penalty action by third-parties.[8] Thus, at the same time plaintiff argues the legislature was creating in La. R.S. 22:1220 a broad far-reaching duty to settle all claims with both the insured and third-party claimants, the legislature was making it clear in La. R.S. 22:658, B that third-party claimants had no penalty action for failure to make an offer of settlement of a property claim.
It would be inconsistent for us to conclude that the legislature was creating a broad based duty to third-party claimants to attempt settlement of all claims, even personal injury claims, when in the same session the legislature was clarifying that it intended no such penalty action for third-party claimants regarding the less controversial issue of property damage claims. The care the legislature took in circumscribing the third-party action available pursuant to La. R.S. 22:658, A to situations where a medical expense or property damage settlement had already been reduced to writing militates against the expansive interpretation of La. R.S. 22:1220 advanced by the plaintiff in this case. Our interpretation, which limits the conduct for which damages and penalties can be sought to the specific acts listed in Subsection B of the statute, is more in harmony with the intent evidenced by the legislature in its contemporaneous 1990 amendments to the related penalty provisions in La. R.S. 22:658.[9]
The legislative history and enforcement scheme of the Part of the Insurance Code in which La. R.S. 22:1220 appears is also highly persuasive. Title 22 of the Louisiana Revised Statutes contains the laws of this state relative to the insurance industry and the relationship of insurers to their insureds and other interested parties. Chapter One, the *190 Insurance Code, is divided into thirty-three Parts dealing with different, though often related, aspects of insurance law. La. R.S. 22:1220, at issue in this case, is found in Part XXVI, entitled "Unfair Trade Practices," which encompasses La. R.S. 22:1211-20.
La. R.S. 22:1213 prohibits any person from engaging in any act defined in Part XXVI as an unfair method of competition or an unfair or deceptive act or practice in the conduct of the business of insurance. La. R.S. 22:1214 then lists the practices defined as violations of La. R.S. 22:1213. Until 1989, "unfair claims settlement practices" were not among the practices regulated by Part XXVI. By Act No. 638 (the same act in which third-party rights were created for the first time in La. R.S. 22:658), the 1989 Louisiana Legislature added a new section to La. R.S. 22:1214 to define "unfair claims settlement practices" as unfair trade practices within the purview of Part XXVI.[10]
La. R.S. 22:1214(14) enumerates fifteen types of conduct defined as unfair claims settlement practices when committed with such frequency as to indicate a general business practice. At the time of its enactment in 1989, the legislative scheme accorded enforcement powers only to the Louisiana Insurance Commissioner, who was given the power to examine, investigate and hold hearings regarding suspected violations of Part XXVI. In the event a violation was found, the Commissioner was authorized to issue a cease and desist order, impose monetary penalties or, in an appropriate case, to suspend or revoke an insurer's license.
The list of acts proscribed by La. R.S. 22:1214(14) is derived from the National Association of Insurance Commissioners' Model Unfair Claims Practices Act, which has been widely adopted.[11] A similar list of unfair claims settlement practices and enforcement *191 scheme is found in the "Unfair Trade Practices in Insurance" laws of other states. Courts that have considered the issue have generally decided that the enumerated unfair claims settlement practices do not support a private right of action for the benefit of either insureds or third-party claimants, absent a clear expression of legislative will to that effect.[12] In 1989, there was an attempt to include in the legislation a private right of action for violation of the initial version of La. R.S. 22:1214(14). That proposal was deferred. In 1990, another attempt was made to create a private right of action for violation of unfair claims settlement practices. As a result, the legislature for the first time established, by the passage of La. R.S. 22:1220, a private cause of action within the Unfair Trade Practices Act. However, the legislative history makes it clear that the conduct as to which a cause of action was created is not co-extensive with the broad range of activities listed in La. R.S. 22:1214(14).
La. R.S. 22:1220 underwent major revisions before its final passage. The statute originated as part of an effort to substantially revise La. R.S. 22:1214(14), which had been passed the previous year. Some legislators were frustrated with the progress made by the Insurance Commissioner in handling the large number of complaints from the public about unfair claims settlement practices, particularly the practice of delaying issuance of settlement checks.[13] That practice was not among those that had been defined as an unfair claims settlement practice in the 1989 legislation. Senate Bill 320 was proposed, which would have jettisoned the fifteen types of conduct outlined in the 1989 version of La. R.S. 1214(14) and substituted a smaller list of six types of particularly egregious conduct. Proposed Senate Bill 320 would have reenacted La. R.S. 22:1214(14) to define as an unfair claims practice "knowingly committing or performing any of the following ...":
(a) Misrepresenting facts or insurance policy provisions relating to any coverages at issue.
(b) Failing to pay in full the amount of a settlement within thirty days from the date on which an agreement to pay and accept a certain sum in settlement of a claim has been reached and reduced to writing.
(c) Denying coverage or attempting to settle a claim on the basis of an application which was altered by the insurer without notice to, or knowledge or consent of, the insured.
(d) Misleading a claimant as to the applicable prescriptive period.
(e) Failing to advise an insured that the insurer is taking a position adverse to the insured on the claim in question; provided that an insurer shall not be required to so advise the insured if the loss is related to suspected criminal activity on the part of the insured and there is an ongoing investigation of such criminal activity by a law enforcement agency.
(f) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious or without probable cause. However, the provisions of this subparagraph shall not apply to claims made under uninsured or underinsured motorist coverage.
At the same time, Senate Bill 320 would have created a private right of action to enforce the newly defined unfair claims settlement practices in a new § 1220, which, as originally proposed, would have provided in pertinent part:
A. The commission by an insurer of an unfair claims settlement practice, as proscribed by R.S. 22:1214(14), shall create a cause of action in favor of the insured or the claimant, or both, and against the insurer for any damages sustained as a result *192 of the unfair claims settlement practice. (Emphasis added.)
B. The plaintiff, in addition to any general and special damages to which he may be entitled pursuant to this Section, may also be awarded a penalty not to exceed four times the amount of the loss, or the sum of twenty-five thousand dollars, whichever is greater, plus reasonable attorney fees.
Eventually, the approach of substituting a smaller list of particularly offensive acts for the version of La. R.S. 22:1214(14) enacted in 1989 and cross referencing that smaller list as the exclusive list of proscribed conduct supporting a private right of action in La. R.S. 22:1220 was rejected. The legislature opted to retain the more extensive list of practices based on the Model Act and subject to enforcement by the Commissioner. However, it also retained the concept of allowing a private right of action for the knowing commission of certain egregious claims settlement practices. Instead of substituting the proposed smaller list for La. R.S. 22:1214(14), House Bill 625 incorporated essentially the same smaller list of offensive practices directly into § 1220. This list of conduct clearly originated as a pared down version of the exclusive list of conduct contained in § 1214(14) defining acts punishable as unfair trade practices. During committee hearings, House Bill 625 underwent further modification, but it retained its essential character.[14]
While the legislative history of the act may not provide a definitive answer to all questions of interpretation arising thereunder, it clearly indicates that La. R.S. 22:1220, B evolved from what was intended at its inception to be an exclusive and not an illustrative list. Having separated § 1220 from its original cross-reference to the proposed limited version of § 1214(14), it was natural and structurally appropriate for the legislature to introduce the newly created private cause of action with a statement of policy and introductory language in Subsection A. Had the legislature intended to create new independent broad duties in Subsection A and to give only an illustrative list of breaches in Subsection B, it could easily have cross-referenced the much longer list of practices retained in La. R.S. 22:1214(14), thereby providing many more illustrations of undesirable conduct. Indeed, one of the practices described in La. R.S. 22:1214 which the Commissioner is given the power to police is "not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." La. R.S. 22:1214(14)(f). This is precisely the claim plaintiff makes in this case. But the legislature did not adopt or cross-reference that practice or the entire list of unfair settlement practices contained in La. R.S. 22:1214(14) when it created a private cause of action. Rather, it listed a smaller number of acts deemed appropriate for private enforcement.[15] It is particularly significant that original Senate Bill 320, from which the list of practices in Subsection B evolved, did not list the failure to attempt settlement with third-party claimants as an omission which would support a private cause of action under the statute. Our study of the available minutes from committee hearings likewise persuades us that the legislators considering the act viewed the conduct listed in La. R.S. 22:1220, B as exclusive and not illustrative.
Finally, we note that the interpretation of La. R.S. 22:1220 advanced by the *193 plaintiff would constitute a radical departure from accepted principles of insurance law. While this court has never defined the precise basis of the duties owed by an insurer to its insured, we have held that they are fiduciary in nature and include the duty to discharge policy obligations to the insured in good faith, to defend the insured against covered claims and to consider the interests of the insured as paramount in every settlement. Pareti v. Sentry Indemnity Co., 536 So.2d 417, 423 (La.1988). It is generally agreed that an insurer's duties run primarily in favor of its insured as an outgrowth of duties that have their foundation in the contract between the parties. It is the relationship of the parties that gives rise to the implied covenant of good faith and fair dealing. The relationship between the insurer and third-party claimant is neither fiduciary nor contractual; it is fundamentally adversarial. For that reason, a cause of action directly in favor of a third-party claimant against a tort-feasor's insurer is not generally recognized absent statutory creation.[16] 15A G. Couch, Couch on Insurance 2d § 58.6 (Rev. ed. 1983); 14 G. Couch, Couch on Insurance 2d § 51.136 (Rev. ed. 1982); 45 C.J.S. Insurance § 376; 46A C.J.S. Insurance § 1583.
There is no question that La. R.S. 22:1220, B(1)-(5) and La. R.S. 22:658 do statutorily create certain limited causes of action in favor of third-party claimants that derogate from established rules of insurance law. However, the expression of legislative intent in those instances is express and unambiguous. In the absence of an equally clear expression of legislative will, we are unwilling to adopt a more expansive interpretation of La. R.S. 22:1220 that would drastically affect the traditionally accepted relationships among insureds, insurers and claimants by imposing on insurers a broad, undefined duty to attempt settlement with third parties.
In sum, a reading of La. R.S. 22:1220 that results in a limited expansion of third-party rights, rather than the drastic expansion advocated by plaintiff, is the most reasonable interpretation of the statute based on its language and structure. It is also the interpretation most in keeping with the spirit of the 1990 amendments to La. R.S. 22:658, the minutes of available committee meetings, the legislative history of La. R.S. 22:1220, the principle of interpretation that penal statutes are to be strictly construed and the maxim that when a new law substantially derogates from accepted principles, the interpretation that least departs from established law should be adopted.
For all of the foregoing reasons, we conclude that although a right of action is available to both insureds and third-party claimants under La. R.S. 22:1220, only the commission of the specific acts listed in La. R.S. 22:1220, B can support a private cause of action for breach of the statute. Inasmuch as Midland did not commit any of those specific acts, plaintiff has no cause of action pursuant to La. R.S. 22:1220. Accordingly, we must reverse.

DECREE
For the reasons assigned, the decision of the court of appeal is reversed. The judgment of the trial court denying damages and penalties pursuant to La. R.S. 22:1220 is reinstated. All costs are assessed against plaintiff.
NOTES
[*] Traylor, J. not on panel. Rule IV, Part 2, § 3.
[1] The court awarded $7,265.45 in general and special damages.
[2] 95-227 (La.App. 3d Cir. 11/2/95); 664 So.2d 547.
[3] 95-2895 (La.2/2/96); 666 So.2d 1095.
[4] 95-2895 (La.12/13/96).
[5] The broad term "claimant" includes persons who are "insureds."
[6] The term "claimant" is used in other parts of the insurance code to refer to persons other than an "insured." In La. R.S. 22:1214, the same Part of the code where the statute in question appears, the legislature identifies as an unfair claims settlement practice the act of making known to "insureds" or "claimants" a policy of contesting arbitration awards. La.R.S. 22:1214(14)(k). We also note the use of the term "claimant" in La. R.S. 22:658, wherein a cause of action for penalties and attorney fees is expressly accorded to third-party claimants in limited circumstances.
[7] 1989 and 1990 amendments to La. R.S. 22:658 additionally addressed third-party claims for transportation expenses. La. R.S. 22:658, B(4). These provisions are not at issue in this application.
[8] The 1990 amendment to La. R.S. 22:658, B(1) linked particular infractions to the penalties that could be imposed:

Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor, as provided in R.S. 22:658(A)(1) [which deals with insureds only], or within thirty days after written agreement or settlement as provided in R.S. 22:658(A)(2) [which deals with third-party claimants]....
[9] There can be no question that the legislature was aware of the interrelationship between La. R.S. 22:658 and La. R.S. 22:1220. La. R.S. 22:658, A(3) expressly cross references and notes that penalties for its breach are available under La. R.S. 22:1220. The reach of La. R.S. 22:658, A(3) is not before us for review in this case because there is no claim that Midland failed to timely initiate loss adjustment of the property damage and medical expense claims made against its insured.
[10] La. R.S. 22:1214(14) provides:

(14) Unfair claims settlement practices. Committing or performing with such frequency as to indicate a general business practice any of the following:
(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue.
(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.
(c)Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.
(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information.
(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed.
(f) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.
(g) Compelling insureds to institute litigation to recover amounts due under any insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.
(h) Attempting to settle a claim for less than the amount for which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.
(i) Attempting to settle claims on the basis of an application which has altered without notice to, or knowledge or consent of, the insured.
(j) Making claims payments to insured or beneficiaries not accompanied by statement setting forth the coverage under which the payments are being made.
(k) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration.
(l) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.
(m) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.
(n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.
(o) Failing to provide forms necessary to present claims within fifteen calendar days of a request with reasonable explanations regarding their use, if the insurer maintains the forms for that purpose.
[11] 2 Warren Freedman, Richards on the Law of Insurance §§ 9.3-.7 (6th ed. 1990) and 1996 Cumulative Supplement.
[12] See 2 Warren Freedman, Richards on the Law of Insurance §§ 9.3-.7 (6th ed. 1990) and 1996 Cumulative Supplement. See also Moradi-Shalal v. Fireman's Fund Ins. Co., 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58 (1988) and O.K. Lumber Co., Inc. v. Providence Washington Ins. Co., 759 P.2d 523 (Alaska 1988) and cases cited therein.
[13] Minutes of Civil Law and Procedure Committee, May 15, 1990.
[14] The prohibited conduct appearing in La. R.S. 22:1220, B (1) and (3) can be traced directly to conduct prohibited as an unfair trade practice in La. R.S. 22:1214(14)(a) and (i). The conduct prohibited at La. R.S. 22:1220, B (2) and (5) is closely related to the conduct prohibited in La. R.S. 22:658, A(1) and (4). The prohibition against misleading a claimant as to the applicable prescriptive period found in La. R.S. 22:1220, B(4) cannot be found in either La. R.S. 22:1214 or La. R.S. 22:658. However, it was one of the types of egregious conduct listed in proposed Senate Bill 320 and is among the unfair claims settlement practices treated in the Model Act and Unfair Trade Practices Acts of other states. See, e.g., Cal. Ins.Code 790.03(h)(15) and 2 Warren Freedmen, Richards on the Law of Insurance § 9.7 (6th ed. 1990).
[15] We deal in this case only with the right and cause of action available under La. R.S. 22:1220. Our holding does not affect rights and causes of action the insured may have directly against his own insurer for breach of the implied covenant of good faith and fair dealing arising out of the contractual and fiduciary relationship between those parties.
[16] See, e.g., Neigel v. Harrell, 82 Wash.App. 782, 919 P.2d 630 (1996); Herrig v. Herrig, 844 P.2d 487 (Wyo.1992) and cases cited therein.