860 So.2d 1112 (2003)
The SULTANA CORPORATION, d/b/a Hannon Jewelers
v.
JEWELERS MUTUAL INSURANCE COMPANY.
No. 2003-C-0360.
Supreme Court of Louisiana.
December 3, 2003.
*1114 Leonard Cardenas, III, Baton Rouge, for Applicant.
Amos H. Davis, Baton Rouge, for Respondent.
Adrianne L. Baumgartner, Covington, for Amicus Curiae, Louisiana Association.
KNOLL, Justice.
This case addresses a split among the circuit courts of appeal as to whether proof of actual damages is a prerequisite to an award of penalties under LA.REV.STAT. ANN. § 22:1220(C) for an insurer's failure to timely fund a settlement. Finding actual damages need not be proven, we reverse and remand to the trial court for the assessment of damages.

FACTS AND PROCEDURAL HISTORY
The Sultana Corporation d/b/a Hannon Jewelers (hereinafter Sultana) sued its insurer, Jewelers Mutual Insurance Company (hereinafter Jewelers), over an issue of insurance coverage. After a bench trial, Sultana was awarded judgment in the amount of $14,426, plus legal interest and court costs, against Jewelers. Acquiescing in the judgment, Jewelers wrote a letter on February 1, 2001, to Sultana, agreeing to settle the litigation for the amount awarded in the trial court. In conformity with Jewelers's instructions, Sultana's counsel wrote "Agreed & Accepted" on the settlement letter, signed and dated it, and returned the letter by fax on the same day it was received. Counsel for Jewelers then requested issuance of a settlement check.
When Sultana received no further communications regarding the settlement, its counsel sent a letter on March 14, 2001, to the trial judge, forwarding a copy of a motion to enforce settlement and prayer to assess statutory penalties and costs for Jewelers's failure to pay the amount owed within thirty days of settlement.[1] Jewelers received a copy of the letter on March 15, 2001. After counsel for Jewelers determined that a check had not been tendered because of a clerical error in Jewelers's Wisconsin office,[2] it immediately *1115 forwarded a settlement check. Notwithstanding receipt of the settlement funds, Sultana pursued its motion for statutory penalties under LA.REV.STAT. ANN. § 22:1220(C).
After conducting a hearing, the trial court denied Sultana's motion. It indicated that Sultana was not entitled to a penalty award because it failed to prove it sustained actual damages by Jewelers's untimely payment of the settlement. In reaching this conclusion, the trial court determined that the affidavit of Bayardo Hannon, Sultana's owner, which stated he had to use out-of-pocket cash instead of the settlement proceeds to fund new store construction, was insufficient to establish actual damages. Sultana appealed.
In its affirmation of the trial court, the court of appeal, relying on well settled jurisprudence in the First Circuit,[3] held that the trial court did not err in requiring Sultana to prove actual damages to support its penalty claim against Jewelers. In reaching this conclusion, the appellate court recognized the Third, Fourth and Fifth Circuit Courts of Appeal have found that penalties can be awarded pursuant to LA.REV.STAT. ANN. § 22:1220(C) even if actual damages were not proven.[4] Alternatively, the appellate court further found no manifest error in the trial court's determination that Hannon's affidavit was insufficient to establish actual damages. The Sultana Corporation d/b/a Hannon Jewelers v. Jewelers Mutual Ins. Co., 01-2059 (La.App. 1 Cir. 12/31/02), 837 So.2d 134.
We granted Sultana's writ application to reconcile the split among the various courts of appeal on the narrow issue of whether actual damages must be proven before penalties may be assessed under LA.REV.STAT. ANN. § 22:1220(C).[5]The Sultana Corporation d/b/a Hannon Jewelers v. Jewelers Mutual Ins. Co., 03-360 (La.4/25/03), 842 So.2d 387.

DISCUSSION
The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. Touchard v. Williams, 617 So.2d 885 (La.1993). Principles of judicial interpretation of statutes are designed to ascertain and enforce the intent of the Legislature in enacting the statute. SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX (La.6/29/01), 808 So.2d 294, citing Stogner v. Stogner, 98-3044 (La7/7/99), 739 So.2d 762, 766; State v. Piazza, 596 So.2d 817, 819 (La.1992). The fundamental question in all cases of statutory construction is legislative intent and the reasons that prompted the Legislature to enact the law. Succession of *1116 Boyter, 99-0761 (La.1/7/00), 756 So.2d 1122, 1128. When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further inquiry made in search of the legislative intent. LA. CIV.CODE ANN. art. 9; LA.REV.STAT. ANN. § 1:4.
The meaning and intent of a law is determined by considering the law in its entirety and all other laws concerning the same subject matter and construing the provision in a manner that is consistent with the express terms of the statute and with the obvious intent of the lawmaker in enacting it. Boyter, 756 So.2d at 1129; Stogner, 739 So.2d at 766. The statute must therefore be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the Legislature had in enacting it. Boyter, 756 So.2d at 1129. Courts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless, if that result can be avoided. Langlois v. East Baton Rouge Parish Sch. Bd., 99-2007 (La.5/16/00), 761 So.2d 504, 507; Boyter, 756 So.2d at 1129. Furthermore, "the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result." First Nat'l Bank of Boston v. Beckwith Mach. Co., 94-2065 (La.2/20/95), 650 So.2d 1148, 1153 (quoting Smith v. Flournoy, 238 La. 432, 115 So.2d 809, 814 (1959)). The starting point in the interpretation of any statute is the language of the statute itself. Touchard, 617 So.2d at 888.
As recognized in Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184,187, LA.REV.STAT. ANN. § 22:1220 was enacted as part of the "Unfair Trade Practices" section of the Insurance Code.[6] LA.REV.STAT. ANN. § 22:1220 provides, in pertinent part:
A. An insurer ... owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
....
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
....
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
*1117 We have generally held that statutes subjecting insurers to penalties, such as LA. REV.STAT. ANN. § 22:1220, are considered penal and, as such, should be strictly construed. Theriot, 694 So.2d at 187; Hart v. Allstate Ins. Co., 437 So.2d 823 (La.1983).
An insurer owes its insured the duty specified by LA.REV.STAT. ANN. § 22:1220(B)(2), i.e., payment of a settlement within thirty days after it has been reduced to writing, and an insured has a cause of action against the insurer for a violation of that duty. As this Court recognized in Theriot, 694 So.2d 184, the practice by insurers of delaying the issuance of settlement checks was one of the principal grounds for the enactment of this statute. Theriot, 694 So.2d at 187.
Subsection (C) of LA.REV.STAT. ANN. § 22:1220, which stipulates the penalties which may be awarded for an insurer's breach of its duty to perform any of the acts enumerated in Subsection (B), provides that "[i]n addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties." (emphasis added). Compare Subsection (A) of LA.REV.STAT. ANN. § 22:1220 which states that "[a]ny insurer who breaches these duties shall be liable for any damages sustained as a result of the breach." (emphasis added). Simply stated, even though the award of general or special damages, if requested, is mandatory, the trial court's grant of penalties under Subsection (C) of LA.REV.STAT. ANN. § 22:1220 is discretionary. Although the litigants are in general agreement with the mandatory award of damages under Subsection (A) and the permissive nature of the penalty award under Subsection (C), they disagree as to whether general and/or special damages must be proven before penalties may be awarded under Subsection (C).
By the clear implication of its ruling, the trial court found the settlement agreement between Sultana and Jewelers was complete on February 1, 2001. That finding is supported by the record, and the settlement was reduced to writing for purposes of LA.REV.STAT. ANN. § 22:1220 on that date. Because payment was not tendered until forty-one days later on March 15, 2001, it is also clear the insurer failed to pay the settlement within the 30-day period required by LA.REV.STAT. ANN. § 22:1220(B)(2).
Reflective of the First Circuit's appreciation of the issue presented is well stated in Carter v. Davis, 95-2198 (La.App. 1 Cir. 5/10/96), 673 So.2d 362, writ denied, 96-1449 (La.5/27/97), 696 So.2d 991.[7] In the Carter case, the sole issue presented on appeal was whether the trial court erred in awarding $5,000 in penalties for bad faith settlement practices under LA.REV.STAT. ANN. § 22:1220. Carter, 673 So.2d at 363. In reversing the trial court's penalty award, the First Circuit reasoned:
[W]e believe that the plain language of the statute dictates this result. A court's interpretation of a law should reflect the meaning the lawmaker intended. Furthermore, it is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. The penalty provision clearly states, "[I]n addition to any general or *1118 special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties...." (Emphasis supplied.) Giving meaning to each word of the statute, we believe that the lawmakers intended the penalty provisions in Section C of the statute to apply only in circumstances where the claimant has proven his entitlement to general or special damages.
It is the plaintiff's burden to prove the damage he suffered as a result of defendant's fault, and to support an award there must be evidence in the record. The record herein reveals no evidence of damages suffered by the plaintiff as a result of the defendant's conduct. Under these circumstances the trial court erred in awarding plaintiffs penalties under LSA R.S. 22:1220.
Carter, 673 So.2d at 364-65.
As to the other circuit courts of appeal who have addressed the question of whether proof of actual damages is a prerequisite to the award of penalties, Midland Risk Ins. Co. v. State Farm Mut. Auto. Ins. Co., 93-1611 (La.App. 3 Cir. 9/21/94), 643 So.2d 242, best illustrates the countervailing position that a showing of damages is not required. The Third Circuit stated:
Section 1220(A) legislatively imposes a duty of good faith and fair dealing on insurers. Section 1220(B) enumerates certain acts, which if knowingly committed or performed by an insurer, constitute a breach of its duty of good faith and fair dealing.
Penalties are imposed to discourage certain types of conduct by an insurer. The language in Section 1220(C) does not expressly require that a claimant suffer damages before recovering penalties. Moreover, if this requirement was so, the statute's purpose more often would be thwarted. Claimants may decide not to file claims against insurers if the disputed amount or the damages are not substantial. As an end result, the misconduct which the legislature obviously intended to curb or deter would thrive. Thus, we find if an insurer commits any one of the acts enumerated in Section 1220(B), penalties may be imposed without a showing of damages.
Midland, 643 So.2d at 244.
After carefully comparing the two analyses of LA.REV.STAT. ANN. § 22:1220(C), we find the Third, Fourth, and Fifth Circuits' holdings with regard to the interpretation and application of LA.REV.STAT. ANN. § 22:1220(C) correct and more reconcilable with the Legislature's enactment of this statute. Such an understanding squares well with the principle that an insurer's duty of fair dealing emanates from the contractual and fiduciary relationship between the insured and insurer. See Manuel v. Louisiana Sheriff's Risk Management Fund, 95-0406 (La.11/27/95), 664 So.2d 81.
The penalty provision clearly states, "[I]n addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties ...." (emphasis added). "In its usual sense, to entitle is... [t]o qualify for; to furnish with proper grounds for seeking or claiming." BLACK'S LAW DICTIONARY 626 (4th ed.1968). Under the provisions of Section (A) of LA.REV. STAT. ANN. § 22:1220 the insurer "shall be liable for any damages sustained [by the insured or the claimant, or both] as a result of the breach" of its "duty of good faith and fair dealing." Clearly, Sultana is entitled to seek general or special damages from its insurer, Jewelers; it simply chose not to seek such damages in the present case. Notwithstanding, Section (C) of LA. REV.STAT. ANN. § 22:1220 recognizes that the trial court may award penalties "[i]n addition to any general or special damages *1119 to which a claimant is entitled." Requiring the insured or claimant to prove general or special damages as a prerequisite to the award of penalties as advocated in the First Circuit, even though the insured or claimant has not so claimed, interjects a requirement not provided in the statute.
It is presumed the Legislature acts with full knowledge of well-settled principles of statutory construction. State v. Bedford, 01-2298 (La.1/28/03), 838 So.2d 758. It is also presumed that every word, sentence or provision in a statute was intended to serve some useful purpose, that some effect be given to each such provision, and that the Legislature used no unnecessary words or provisions. Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1 Cir.1984). Applying these principles to the present case, we find the appellate court erred in requiring the insured to prove that it suffered damages as a prerequisite for the discretionary award of penalties under Section (C) of LA.REV. STAT. ANN. § 22:1220.
We further find no merit in Jewelers's contention that Sultana had the burden of proving Jewelers arbitrarily and capriciously withheld the settlement funds for more than thirty days. Section (B)(2) of LA.REV.STAT. ANN. § 22:1220 does not require such proof. Compare Section (B)(5) of LA.REV.STAT. ANN. § 22:1220 which states that an insurer's failure to pay any claim within sixty days after receipt of satisfactory proof of loss constitutes a breach of the insurer's duties if it is shown that "such failure is arbitrary, capricious, or without probable cause." The Legislature did not require such proof with regard to the timely payment of settlement funds. Rather Section (B) simply requires that the insured or claimant must show that failure of an insurer to timely pay the settlement be "knowingly committed." In the present case, Jewelers was represented by Louisiana counsel, who presumably knew the requirements of LA.REV.STAT. ANN. § 22:1220(B)(2), and it had a claims department under the supervision of a corporate vice-president to monitor the insurer's compliance with Louisiana's laws. Accordingly, Jewelers cannot not shield itself from potential liability for penalties by hiding behind its assertion that timely payment was not forthcoming because of a clerical error. See n.2, supra. This legislative enactment would ring hollow in the face of such a defense and do little, indeed if anything, to encourage timely payment of settlements.

DECREE
For the foregoing reasons, the judgments of the lower courts are reversed and set aside. This matter is remanded to the trial court for consideration of the award of penalties in accordance with the views expressed in this opinion.
REVERSED AND REMANDED.
NOTES
[1] Sultana never sought the award of general or special damages.
[2] Bill Herrbold, Jewelers's Vice-President of claims, stated in his affidavit that, "[t]he delay in issuing the settlement check was simply a combination of our attorney's letter regarding settlement being received during my absence while on business in Seattle and being placed, without my knowledge, into the file."
[3] See e.g., Reed v. Recard, 97-2250 (La.App. 1 Cir. 11/18/98), 744 So.2d 13, 19, writ denied, 98-3070 (La.2/12/99), 738 So.2d 572; Batson v. South Louisiana Med. Ctr., 97-1382 (La. App. 1 Cir. 9/25/98), 724 So.2d 782, 789, writ granted in part, jmt. amended on other grounds, 98-2709 (La.1/8/99), 734 So.2d 649; Carter v. Davis, 95-2198 (La.App. 1 Cir. 5/10/96), 673 So.2d 362, 364, writ denied, 96-1449 (La.6/27/97), 696 So.2d 991.
[4] See e.g., Hollier v. State Farm Mut. Auto. Ins. Co., 01-0592 (La.App. 3 Cir. 10/31/01), 799 So.2d 793; Becnel v. Lafayette Ins. Co., 99-2966 (La.App. 4 Cir. 11/15/00), 773 So.2d 247; Genusa v. Robert, 98-449 (La.App. 5 Cir. 10/14/98), 720 So.2d 166; but see Adams v. Stratton, 02-224 (La.App. 5 Cir. 10/16/02), 831 So.2d 290. See also Hannover Corp. of America v. State Farm Mut. Auto. Ins. Co., 67 F.3d 70 (5 Cir.1995); Marine Holdings, Inc. v. Paradigm Ins. Co. 2000 WL 245830 (E.D.La. 2000).
[5] Because penalties were not awarded in the trial court, we are not faced with the question of whether Subsection (C) of LA.REV.STAT. ANN. § 22:1220 imposes a minimum penalty.
[6] Although we do not rely upon the legislative history of LA.REV.STAT. ANN. § 22:1220 in our resolution of the issues presented, a detailed background on the statute may be found in Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184 and Manuel v. Louisiana Sheriff's Risk Management Fund, 95-0406 (La.11/27/95), 664 So.2d 81.
[7] Champagne v. Hartford Cas. Ins. Co., 607 So.2d 752 (La.App. 1 Cir.1992) appears to be the first case in the First Circuit in which it was held that "the penalty provision of La. R.S. 22:1220(C) is applicable only after a showing of damages actually suffered as a result of the breach." Champagne, 607 So.2d at 758. At that time, the appellate court offered no explanation in support of that holding.