Dear Mr. Autin:
This Office is in receipt of your request for an Attorney General's Opinion on the following issue:
By Acts 2006, 1st Extraordinary Session, No. 32, La.R.S. 38:329.1(C) was amended to require the South Lafourche Levee District ("SLLD") to annually remit to the Lafourche Basin Levee District ("LBLD") a portion of "mineral revenues received on any lands within the boundaries of the SLLD that were previously owned by the LBLD."
An oil and gas lease entered by the SLLD provides payment by the Lessee of "delay rentals" to the SLLD by oil and gas lease holders in consideration of the "privilege of deferring commencement of drilling operations for a period of twelve months" when actual drilling has not commenced within a certain time frame. Are such "delay rentals" classified as "mineral revenues" subject to the provisions of La.R.S. 38:329.1?
Boiled down to its most basic question, your opinion request asks: What is the definition of "mineral revenues?" "Mineral revenues," or what types of payments are included within the broad term of art "mineral revenues," is not clearly defined in law or interpreted by Louisiana jurisprudence. However, the term "mineral revenues" is used in the Louisiana Constitution and other parts of Louisiana's statutes.[1] Specifically, La.Const. art. VII § 10.2(A), in pertinent part, states:
Of revenues received in each fiscal year by the state as a result of the production of or exploration for minerals, hereinafter referred to *Page 2 
as mineral revenues from severance taxes, royalty payments, bonus payments, or rentals, and excluding such revenues received by the state as a result of grants or donations when the terms and conditions thereof require otherwise, the treasurer shall make the following allocations . . .
(Emphasis added). Another example of the use of the term "mineral revenues" in the Louisiana Constitution is in Article VII § 10.3(A)(2)(a), which states:
All revenues received in each fiscal year by the state in excess of seven hundred fifty million dollars, hereinafter referred to as the base, as a result of the production of or exploration for minerals, hereinafter referred to as mineral revenues, including severance taxes, royalty payments, bonus payments, or rentals, and excluding such revenues designated as nonrecurring pursuant to Article VII, Section 10(B) of the constitution, any such revenues received by the state as a result of grants or donations when the terms or conditions thereof require otherwise, and revenues derived from any tax on the transportation of minerals, shall be deposited in the fund after the following allocations of said mineral revenues have been made . . .
(Emphasis added). It is important to note that these constitutional articles deal with the distribution of funds. Note that while the constitutional articles do not define "mineral revenues," they include a list of what makes up or constitutes "mineral revenues." Included in that list are "rentals." The statutory provisions of La.R.S. 38:329.1(C), [2] offer a similar treatment of the term "mineral revenues," and like the constitutional articles, deal with distribution of funds. Viewed in concert, these provisions suggest that "mineral revenues" consist of all revenues derived from "the production of or exploration for minerals".
Further, in Theriot v. Midland Risk Insurance Co., [3] the Louisiana Supreme Court explained that the starting point in statutory interpretation is the language of the *Page 3 
statute itself. Ambiguous text is to be interpreted according to the generally prevailing meaning of the words employed.[4] Their meaning may be sought by consulting other laws on the same subject matter. Where a part of an act is to be interpreted, it should be read in connection with the rest of the act and all other related laws on the same subject.[5]
In keeping with the pronouncement in Theriot that ambiguous text is to be interpreted according to the generally prevailing meaning, we refer to the following definition of the term "revenues"; Black's Law Dictionary defines "revenues" as:
The gross receipts of a business, individual, government, or other reporting entity. The receipts are usually the result of product sales, services rendered, interest earned, etc.
As applied to the income of a government, a broad and general term, including all public moneys which the state collects and receives from whatever source and in whatever manner.[6]
(Emphasis added). As can be seen from the above definition, "revenues" tend to be inclusive of all potential streams of income and this fact is especially true when the revenues being received are those going to a public entity. La.R.S. 38:329.1(A)(1) clearly states that SLLD shall "constitute a political subdivision of the state of Louisiana." Thus, in keeping with the accepted statutory interpretation principle enunciated in Theriot of interpreting words in their traditional meaning, revenues would include "gross receipts" and "all public moneys which the state [or in this matter, the political subdivision] collects." Also important inTheriot's statutory interpretation principles are the rules that "meaning may be sought by consulting other laws on the same subject matter" and that laws "should be read in connection with . . . all other related laws on the same subject."[7] As referenced above, the Louisiana Constitution and other Louisiana statutes, when using the term "mineral revenues," consistently include, inter alia, royalty payments, bonus payments and rentals.
Therefore, given the rules of statutory interpretation as discussed in Theriot and the inclusive nature of the definition of "revenues" in the Black's Law Dictionary, it is the opinion of this Office that the term "mineral revenues" includes all revenues derived from the production of or exploration for minerals. These various types of revenues include, but are not limited to: royalty payments, bonus payments, and rentals. Thus, in answer to your question: it is our opinion that the "delay *Page 4 
rentals" mentioned in SLLD's mineral leases are classified as "mineral revenues" subject to the provisions of La.R.S. 38:329.1.
Last, it should be noted that had the Louisiana Legislature chosen to limit what revenues were to be shared between the SLLD and the LBLD, the Legislature could have used the words "mineral royalty" as defined in La.R.S. 31:80.[8] Instead, however, the Legislature chose to use the words "mineral revenues," which, as discussed herein, are more inclusive. Interestingly and similarly, the Louisiana Constitution, supra, did just this, in effect, when it expressly listed the sole exclusion to "mineral revenues" regarding "grants or donations,"[9] and then again when it expressly listed the three exclusions regarding "nonrecurring [revenues]," "grants or donations," and "mineral transportation tax[es]."[10]
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
Sincerely yours,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
By: __________________________ JACKSON D. LOGAN III Assistant Attorney General
JDC/JDLIII/ard
[1] La.Const art. VII § 10.2(A) and § 10.3(A)(2)(a) are discussed in the body of this opinion, it should be noted that the term "mineral revenues" is also used in a similar manner in La.Const. art. VII § 10.5, and La.R.S. 39:94(A)(2)(a) and49:214.5.4.
[2] La.R.S. 38:329.1(C) provides:
Because the Lafourche Basin Levee District continues to provide mainline Mississippi River levee protection which is beneficial to Lafourche Parish, the South Lafourche Levee District shall make payments to the Lafourche Basin Levee District as follows:
(1) For the year 2007, thirty-five percent of the 2006 mineral revenues received on any lands within the boundaries of the South Lafourche Levee District that were previously owned by the Lafourche Basin Levee District.
(2) For the year 2008, twenty-five percent of the 2007 mineral revenues received on any lands within the boundaries of the South Lafourche Levee District that were previously owned by the Lafourche Basin Levee District.
(3) For the year 2009 and thereafter, fifteen percent of the mineral revenues received on any lands within the boundaries of the South Lafourche Levee District that were previously owned by the Lafourche Basin Levee District.
[3] 95-2895 (La. 1997), 694 So.2d 184.
[4] La.C.C. Art. 11.
[5] Theriot, supra at 186.
[6] See BLACK'S LAW DICTIONARY 1319 (Joseph R. Nolan and Jacqueline M. Nolan-Haley, ed., 6th
ed, West 1990).
[7] Theriot, supra at 186.
[8] La.R.S. 31:80 provides:
A mineral royalty is the right to participate in production of minerals from land owned by another or land subject to a mineral servitude owned by another. Unless expressly qualified by the parties, a royalty is a right to share in gross production free of mining or drilling and production costs.
[9] La.Const. Art. VII § 10.2(A).
[10] La.Const. Art. VII § 10.3(A)(2)(a).