# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


**21-700**



**IN RE: CITY OF ST. MARTINVILLE**




**\*\*\*\*\*\*\*\*\*\***



APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 89835
HONORABLE ANTHONY J. SALEME, JR., DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***

## ELIZABETH A. PICKETT
## JUDGE

**\*\*\*\*\*\*\*\*\*\***


Court composed of Elizabeth A. Pickett, Charles G. Fitzgerald, and J. Larry Vidrine,[*] Judges.



**REVERSED.**




**John W. Milton**
**Karnina Dargin King**
**Ryan El. King**
**King Milton Law Group, LLC**
**213 East Willow Street**
**Lafayette, LA 70501**
**(337) 548-3030**
**COUNSEL FOR APPELLANT:**
    **Melinda Mitchell, Mayor of St. Martinville**

---

[*]Honorable J. Larry Vidrine participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Allan L. Durand**
**Attorney at Law**
**235 Rue France**
**Lafayette, LA 70508**
**(337) 237-8501**
**COUNSEL FOR APPELLEE:**
    **City of St. Martinville**

**PICKETT, Judge.**

The mayor of St. Martinville appeals the trial court's judgment granting a declaratory judgment in favor of the City of St. Martinville, declaring the mayor does not have the power to veto any action taken by the City Council. The mayor appealed.

## FACTS

In 1898, the City of St. Martinville adopted a special legislative charter approved by the Louisiana Legislature and has been governed by the charter since that time. The charter vests the government and administration of the City's affairs in a mayor and a council. In 2020, the City Council passed an ordinance amending its charter to convert the mayoral position from full-time to part-time. Mayor Melinda Mitchell consulted with the City's attorney who informed her, the mayor did not have the power or authority to veto matters approved by the City Council. Thereafter, Mayor Mitchell opined at a City Council meeting that she did have the authority to veto City Council actions and declared that she vetoed the ordinance. The City filed a petition for declaratory judgment, seeking a judgment declaring the mayor of St. Martinville cannot veto actions taken by the City Council.

St. Martinville's charter does not mention or provide a procedure for the mayor to veto any action taken by the City Council. Mayor Mitchell cites La.R.S. 33:406 and La.R.S. 33:481 of the Lawrason Act as providing the mayor the authority to veto City Council actions because the City's charter is silent on the Mayor's right to veto. The City counters that its charter provides all that is required with regard to its authority to pass legislation for the City; therefore, the Lawrason Act has no application here, and the mayor has no power or authority to veto any action it takes. The City also cites its charter and argues the Mayor has no veto power. It points out that the charter grants the City Council much more

authority to govern than it grants the Mayor and concludes the charter is not silent on the right to veto.

After conducting a hearing, the trial court agreed with the City and granted judgment "declaring that the Mayor of the City of St. Martinville does not have the power of a veto over any action of the St. Martinville City Council, under the St. Martinville City Charter as presently constituted." Mayor Mitchell appealed.

## ASSIGNMENTS OF ERROR

Mayor Mitchell assigns the following errors with the trial court's judgment:

1. The [trial court] erred as a Matter of Law in Declaring that the Mayor of the City of St. Martinville is Not Granted Veto Power under Louisiana Law.

2. The [trial court] erred as a Matter of Law in Assessing Costs Against the Mayor of the City of St. Martinville in Direct Contradiction to Louisiana Revised Statute[s] 13:4521.

## DISCUSSION

The Lawrason Act, La.R.S. 33:321-463, governs all Louisiana municipalities that are not governed by a special legislative charter. In 2010, the legislature added La.R.S. 33:481, which states, in pertinent part:

> Notwithstanding any other provision of law to the contrary, in any municipality governed by a special legislative charter, if the provisions of the special legislative charter are silent on a particular matter, then the provisions of Part I of Chapter 2 of Title 33 of the Louisiana Revised Statutes of 1950 shall govern. If a conflict exists between the provisions of the special legislative charter and the provisions of Part I of Chapter 2 of Title 33 of the Louisiana Revised Statutes of 1950, then the provisions of the special legislative charter shall govern.

The Lawrason Act provides for the veto of an ordinance in La.R.S. 33:406(C)(2) and states, in pertinent part: "If the mayor disapproves the ordinance, he shall, within ten days after receipt of the ordinance, return the ordinance along with his written statement of the reasons for his veto to the

municipal clerk for transmittal to each member of the board of aldermen." Section 406(C)(3) also provides a mechanism for the City Council to override any veto made by the mayor and requires that an ordinance vetoed by the mayor be considered again by the City Council at its next regular meeting after the veto.

As referenced above, Mayor Mitchell observes the City's charter does not provide a mechanism for an ordinance passed by the City Council to be vetoed. Therefore, she concludes the charter is silent on the matter, and as provided in La.R.S. 33:481, the Lawrason Act authorizes the mayor to veto ordinances or resolutions passed by the City Council.

The City cites the maxim *expressio unius et exclusio alterius* in support of its argument that its charter is not silent on the issue of veto power. This legal maxim expresses that "when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have been easily included in the statute, is deemed intentional." *Theriot v. Midland Risk Ins. Co.*, 95-2895, p. 4 (La. 5/20/97), 694 So.2d 184, 187.

The trial court accepted the City's argument and applied this maxim, stating:

> The Court does not find that the lack of mention of the word veto means that the City Charter is silent as to that. It's [sic] spelled out what the Mayor['] s powers are. I believe that not mentioning the veto power is because it did not want to give the Mayor the veto power. And I don't believe it would have [had] to have specifically spelled out the Mayor does not have the right to veto.

This appeal presents a question of law having to do with statutory construction. Specifically, we must determine what impact, if any, the passage of La.R.S. 33:481 had on St. Martinville's legislative charter. Accordingly, our review is de novo. *Fairbanks Dev., LLC v. Johnson*, 20-1031 (La. 9/30/21), 330 So.3d 183. In conducting our review, we are mindful that "the Legislature is presumed to have enacted a statute in the light of preceding statutes involving the

3

same subject matter, and decisions construing such statutes and, where the new statute is worded differently from the preceding statutes, the Legislature is presumed to have intended to change the law." *Doyal v. Roosevelt Hotel*, 234 So.2d 510, 513 (La.App. 4 Cir. 1970). We are also cognizant that "[t]he legal maxim 'expressio unius est exclusio alterius' expresses a rule of statutory construction and not of substantive law and serves only as an aid in discovering the legislative intent when it is not otherwise manifest." *Id*. at 514.

Until 2010, when La.R.S. 33:481 was added, the Lawrason Act did not apply to municipalities operating under a special legislative charter. *See* La.Atty. Gen. Op. 92-765 (November 13, 1992), (concluding the mayor of a city governed by a special legislative charter had no veto power because "the charter [did] not affirmatively give the mayor veto power.") *See also* La.Atty. Gen. Op. 92-703 (October 27, 1992), (concluding the provisions of the Lawrason Act did not apply where the special charter was "silent on a particular matter.")

The Engrossed Digest, Original, 2010 Reg. Sess. H.B. 1002, April 26, 2010, shows the legislature intended to change the law governing special legislative charters:

> Present law (R.S. 33:321 et seq.)(Lawrason Act) provides generally for the mayor-board of aldermen form of municipal government. Provides that all municipalities shall be governed by the provisions of the Lawrason Act, except those municipalities governed by a special legislative charter, a home rule charter, or plan of government adopted pursuant to the state constitution, the commission plan, or the commission-manager plan. Provides for the selection and functions of municipal officers.
>
> Proposed law retains present law.
>
> Proposed law provides that if the provisions of a special legislative charter are silent on a particular matter, then the provisions of a Lawrason Act shall govern. Further provides that if a conflict exists between the provisions of the special legislative charter and the

4

Lawrason Act then the provisions of the special legislative charter shall govern.

The construction of La.R.S. 33:481 shows the legislature intended to change the existing law and wanted to make it clear that it recognized the distinction between a charter being silent on an issue versus conflicting with the Lawrason Act. Therefore, the legislature specifies that if the charter is silent, the Lawrason Act applies, but if the charter merely conflicts with the Act, the charter applies.

For these reasons, we find the legislature changed the law governing special legislative charters when it enacted La.R.S. 33:481 and changed the law to mandate the Lawrason Act applies to special legislative charters when they are silent on a particular matter. We further conclude St. Martinville's special legislative charter is silent on the issue of veto;[1] and the mayor of St. Martinville has the power to veto actions of the City Council as provided in La.R.S. 33:406.

## ASSESSMENT OF COSTS

Mayor Mitchell next assigns error with the trial court's assessment of all costs to her, citing La.R.S. 13:4521(B) which states, in pertinent part:

> Except when the law imposes personal responsibility for costs on the agent, officers, or employees, it shall be the responsibility of the governmental entities who temporarily defer costs as set forth in this Section to pay any deferred costs assessed against them or their agents, officer, or employees within thirty days of the judgment becoming final[.]

Neither the City Council nor the trial court cited any law imposing personal responsibility for costs of this proceeding on the mayor of St. Martinville. The City instituted this litigation and named Mayor Mitchell as a person of interest. She responded to the suit in her capacity as mayor for the City. Accordingly, the City, not Mayor Mitchell, is responsible for all costs incurred herein. The trial

---

[1] *See* La.Atty. Gen. Op. 13-0055 (June 18, 2013), (concluding the Town of Coushatta's special legislative charter was "devoid of any specific language regarding the appointment of the Town's Police Chief, Clerk, or Attorney"; therefore, it was "silent" on those issues.)

5

court's assessment of costs to Mayor Mitchell is vacated, and all costs are assessed to the City.

## DISPOSITION

The trial court's judgment is reversed, and the provisions of La.R.S. 33:406, granting authority to the mayor to veto actions of the City Council, are held to apply to the City of St. Martinville's special legislative charter. All costs totaling $5,213.28 are assessed to the City of St. Martinville.

**REVERSED.**